**AETNA CASUALTY & SURETY COMPANY, Appellant,**

v.

**Charlie E. McCARTNEY, Appellee.**

**No. 3659.**

Court of Civil Appeals of Texas.

Eastland.

Jan. 12, 1962.

Rehearing Denied Feb. 9, 1962.

Fulbright, Crooker, Freeman, Bates & Jaworski, Blake Tartt, Houston, for appellant.

Dixie & Schulman, R. Shearn Smith, Houston, for appellee.

WALTER, Justice.

This is a workmen's compensation case. Charlie E. McCartney recovered judgment against Aetna for permanent partial incapacity at the rate of $34.65 per week for 300 weeks.

Aetna has appealed, contending there was no evidence to support the jury's answers, and that such answers are against the great weight and preponderance of the evidence. Aetna also contends the court erred in submitting Special Issue No. 1 inquiring whether McCartney sustained an accidental injury because it failed to ask separately whether he sustained a general injury or a specific injury.

McCartney sustained an injury in the course of his employment while working for Tenn-Tex Alloy & Chemical Company on October 13th, 1958, when a furnace "blew out" on him.

Appellee's petition alleged he sustained injuries to his back, spine and right side and to his left leg. He also pleaded total incapacity followed by partial permanent incapacity and loss of use, and partial loss of use of his left leg. Aetna filed a general denial and alleged that any incapacity sustained was temporary and partial.

Special Issue No. 1 is as follows:

"Do you find from a preponderance of the evidence that plaintiff, Charlie E. McCartney, sustained an accidental injury on or about October 13, 1958, in the course of his employment for Tenn-Tex Alloy and Chemical Company?" To which the jury answered 'We do'."

The jury found that "such accidental injury" inquired about in Special Issue No. 1 was a producing cause of partial incapacity which began on October 13, 1958, and was permanent. The jury also found that "such accidental injury" inquired about in Special Issue No. 1 was a producing cause of partial loss of use of McCartney's left leg which began on October 13, 1958, and was permanent.

We are unable to determine whether the jury took into consideration the specific injury to McCartney's leg or the general injury to his back and side in finding that the "accidental injury" was a producing cause of partial incapacity. We have no findings that the general injury was a producing cause of McCartney's disability.

In the case of Texas General Indemnity Co. v. Scott, 152 Tex. 1, 253 S.W.2d 651, the plaintiff had pleaded a general injury to her neck and a specific injury to her foot. The court inquired if the plaintiff had sustained an accidental personal injury (a) to her foot (b) to her neck. The jury answered yes to both questions. The court then inquired if such accidental injury was a producing cause of plaintiff's incapacity to

which the jury answered yes. Our Supreme Court held this to be an improper method of submission where there was a specific and a general injury involved. The court said: "The question naturally arises: What accidental injury? Was it the injury described in respondent's pleadings as the injury to the foot or the injury to the neck? We cannot assume that the jury meant to say in answer to Special Issue No. 3 that the accidental injury to the neck was the producing cause of the incapacity suffered by respondent. Neither can we assume that the jury found that the accidental injury sustained to the foot was the producing cause of the incapacity. Each of the classes of injuries involved in this case are separate and distinct and are in no way related to each other. It was the burden of respondent to plead, prove and secure jury findings supporting each of the theories advanced before she would be in position to choose between the two and move the court to render and enter judgment upon the findings establishing the general injury."

McCartney pleaded and submitted evidence of a general injury and a specific injury. The court failed to inquire separately whether he sustained a general injury to his back and side or a specific injury to his leg.

■ We hold McCartney had the burden of securing findings on each of these theories before he would be in a position to choose between them and secure a judgment upon the findings for a general injury. Appellant's point of error on this matter is sustained.

The judgment is reversed and remanded.

## ON MOTION FOR REHEARING

■ McCartney has requested in his motion for rehearing that we pass on Aetna's first twelve points of error. They are no evidence points and great weight and preponderance of the evidence points. Aetna asserts there is no evidence to support the jury's answers that McCartney's injury was a producing cause of partial incapacity; that such partial incapacity began on October 13, 1958; that such partial incapacity is permanent; that McCartney's earning capacity after his injury was $50.00 per week. Aetna also asserts that each of such answers is against the great weight and preponderance of the evidence. McCartney has requested that we pass on these points so that if the Supreme Court disagrees with our reversing and remanding this case for a new trial, it will not be necessary to return the case to this court for further action.

McCartney sustained an injury in the course of his employment while working for Tenn-Tex Alloy & Chemical Company on October 13, 1958, when a furnace "blew-out" on him. Hot metal struck his back, chest and leg. He started running but stumbled and fell and hurt his low back and when asked "When is the first time that you ever mentioned hurting your back to anybody, any doctor, or anybody else?" he answered "I mentioned it to the foreman that night." He also sustained about twenty burns on his back. His foreman treated him at first aid and sometime thereafter he was sent to Dr. Jones, a company doctor. While being treated by the company doctor, McCartney did light duty at the plant. McCartney testified he was not able to do this work but said "It was either do it or starve to death." The company sent McCartney to Dr. Phillips who treated his back. He left Tenn-Tex and started working for Du-Pont Construction Company. His brother was a foreman for DuPont. He tried this work of spreading "shells and stuff" but couldn't take it because his back was bothering him. When asked this question: "And you didn't miss a day from work as the result of this accident?" McCartney answered: "Even when my leg was swelled up I went out there and I didn't have no shoe on because I couldn't wear a shoe, and the Assistant Superintendent called me out in front of the coke machine and said, 'why, haven't you got your shoe on?' I said, 'I can't wear a shoe.' He said, 'Why can't

you?' I said, 'My foot is swelled.' He said, 'Well, I'll tell you what—are you going to work?' And I said, 'I am going to try it.' He said, 'You will have to wear a shoe.' I said, 'I can't wear one.' He said, 'You will either have to put a shoe on or go home.' So I went around to the bath room and taken my knife and cut it all to pieces and put the sole on anyway."

McCartney was unemployed at the time of trial.

Aetna's no evidence points are overruled. We have considered all the evidence and find that the jury's answers are not against the great weight and preponderance of the evidence. Aetna's great weight and preponderance of the evidence points are therefore overruled. Passing on these points does not affect our prior opinion. Appellee's motion for rehearing is therefore overruled.