**Charlie E. McCARTNEY, Petitioner,**

v.

**AETNA CASUALTY & SURETY COMPANY,
Respondent.**

**No. A–8913.**

Supreme Court of Texas

Dec. 5, 1962.

Dixie & Schulman, Houston (Robert E. Hall and R. Shearn Smith, Houston, with firm), for petitioner.

Fulbright, Crooker, Freeman, Bates & Jaworski, Houston (L. S. Carsey and Blake Tartt, Houston, with firm), for respondent.

SMITH, Justice.

This is a Workmen's Compensation case. McCartney alleged in his petition that he had sustained permanent injuries to his left leg and to other portions of his body, including his side, back, and chest, and that as a result of the total effects of these concurrent injuries he sustained a loss of wage earning capacity compensable according to Section 11,[1] of Article 8306, Vernon's Annotated Civil Statutes. He alleged, in the alternative, that he sustained a partial permanent loss of use of his left leg, compensable according to Section 12[2] of said Arti-

[1] "Sec. 11. While the incapacity for work resulting from the injury is partial, the association shall pay the injured employee a weekly compensation equal to sixty per cent (60%) of the difference between his average weekly wages before the injury and his average weekly wage earning capacity during the existence of such partial incapacity, but in no case more than Thirty-five Dollars ($35) per week. The period covered by such compensation shall be in no case greater than three hundred (300) weeks; provided that in no case shall the period of compensation for total and partial incapacity exceed four hundred and one (401) weeks from the date of injury. Compensation for all partial incapacity resulting from a general injury shall be computed in the manner provided in this Section, and shall not be computed on a basis of a percentage of disability."

[2] "Sec. 12. * * *
"For the loss of a leg, at or above the knee, sixty per cent (60%) of the

cle. McCartney made it clear in his pleadings that he intended to seek recovery alternatively under said sections of the statute. The insurer, Aetna, on the other hand, made no mention in its pleading of any contention that McCartney's disability was confined to his leg.

McCartney introduced evidence supporting each theory of recovery, and both theories were submitted to the jury. The only ultimate issue inquiring about "injury" was special issue No. 1. All subsequent issues have reference to special issue No. 1, which reads:

"Do you find from * * * the evidence that * * * McCartney sustained an accidental injury on or about October 13, 1958, * * *? The jury answered 'Yes.'"

The Court defined the term "accidental injury" in its charge.[3] Special issue No. 2 inquired:

"Do you find from * * * the evidence that *such accidental injury* * * * was a producing cause of any total incapacity to plaintiff, * * *? The jury answered 'No.'" (Emphasis added.)

The issue of partial incapacity was submitted to the jury by special issue No. 5, which reads:

"Do you find from * * * the evidence that *such accidental injury* * * * was a producing cause of any *partial incapacity* to plaintiff, * * *? The jury answered 'Yes.'" (Emphasis added.)

average weekly wages during two hundred (200) weeks."

3. "By the term 'Accidental injury', as used in this charge is meant an unintentional or unexpected occurrence or mishap causing damage or harm to the physical structure of the body and such diseases or infection as naturally result therefrom. This damage or harm to the physical structure of the body may include incitement, acceleration, or aggravation of any disease or condition previously or subsequently existing."

The Court submitted McCartney's alternative theories of recovery in special issues 10-13[4] (total) and 14-18[5] (partial). In answer to special issue No. 10, the jury found that the accidental injury inquired about in special issue No. 1 was not a producing cause of the loss of use of McCartney's left foot. However, in special issues No. 14 and 16, the jury found that such injury was a producing cause of *partial* loss of use of McCartney's left foot [leg], and that the partial incapacity would be permanent.

The trial court entered judgment that McCartney recover compensation of $34.65 for 300 weeks, thereby sustaining McCartney's theory that he was entitled to recover for the cumulative effects of his concurrent general and specific injuries on the basis of the jury's answer to special issue No. 1 and other pertinent issues.

On appeal, the Court of Civil Appeals reversed and remanded the cause to the trial court, thus sustaining Aetna's contention that special issue No. 1 was improperly submitted and that the answer thereto could not form the basis for the trial court's judgment because it was impossible to determine whether the jury took into consideration the "general" injury to his back and side or only the "specific" injury to his leg in finding that the "accidental injury" was the producing cause of partial incapacity. 355 S.W.2d 264.

McCartney seeks to sustain the theory upon which this case was tried in the District Court which was that when an employee has received an injury to a specific

4. "SPECIAL ISSUE NO. 10 Do you find from a preponderance of the evidence that such accidental injury, if any, was or will be a producing cause of loss of use of Charlie E. McCartney's left foot?"

5. "SPECIAL ISSUE NO. 14 Do you find from a preponderance of the evidence that such accidental injury was or will be a producing cause of any partial loss of use of Charlie E. McCartney's left foot?"

member of the body, he is not confined to a recovery of the compensation specifically provided for such injury if he is able to allege and prove other injuries. He contends that the cumulative effect of his concurrent general and specific injuries resulted in a loss of wage earning capacity and also resulted in a partial loss of use to his left leg, and that under such circumstances, it was not necessary in support of this theory, for him to seek jury answers establishing the incapacity which resulted from each of his concurrent injuries.

Aetna objected to special issue No. 1 of the Court's charge on the ground that it submitted in general terms the question of "accidental injury" without limiting the inquiry to a specific type of injury or an injury to a specific part of the body. Aetna contends that such form of submission was harmful, particularly in view of the fact that McCartney claimed a specific injury to the leg and that since such issue was submitted separately to the jury,

"to submit special issue in the form contained therein will allow the jury to find that an accidental injury occurred, even though the jury believed that the injury sustained was only a specific injury, and then thereafter [the jury] could find that such specific injury which is not specifically named in special issue No. 1, caused total incapacity or partial incapacity which was permanent."

Aetna also contended in its objections to the Court's charge that special issue No. 1 should have been limited

"in its words to whether McCartney sustained an injury to the part or parts of his body which he claimed in his pleadings and the evidence shows, other than to the specific member, or even including such specific member."

The Court of Civil Appeals cites the case of Texas General Indemnity Company v. Scott, 152 Tex. 1, 253 S.W.2d 651 (1952), in support of its holding that the trial court's action in overruling Aetna's objections to the charge was error. In that case, the issue to be decided by this court was whether or not the trial court should have submitted the defendant's requested special issues seeking jury findings that Molinda Scott's incapacity was "caused solely" by the "incapacity, if any, to her left foot."

The insurance carrier pleaded and requested a special issue on its affirmative defense, to-wit, that the incapacity, if any, suffered by plaintiff was caused solely by the incapacity, if any, to her left foot. The Court, with the apparent approval of Scott, submitted her case to the jury by inquiring whether Scott sustained an accidental injury, (a) to her foot, (b) to her neck. It was this form of "accidental injury" issue which effectively deprived Scott of her right to have the jury consider the combined, cumulative, unsegregated effects of her general and specific injuries in assessing her incapacity according to the general injury sections of the Workmen's Compensation Law. See Consolidated Underwriters v. Lowrie, Tex.Civ.App., 128 S.W. 2d 421 (1939), wr. ref.

The Scott case was submitted in such a manner that the jury answers afforded no basis for a judgment by the Court. Whereas, the present case was submitted properly to the jury, and the affirmative answers of the jury afforded the basis for a judgment in McCartney's favor for the reasons now to be stated. The jury found that McCartney sustained an accidental injury in the course of his employment. As a result of the total effects of the concurrent injuries McCartney sustained, the jury found that he had sustained a loss of wage earning capacity compensable according to Section 11 of Article 8306, supra. The jury also found that McCartney had sustained a partial-permanent loss of use to his left foot [leg]. This finding would have supported a judgment under the provisions of Section 12, the "specific" injury section of Article

8306, supra. However, the Court properly entered judgment in favor of McCartney for the largest sum recoverable under the verdict of the jury.

The fact that "specific" injury issues were submitted to the jury does not render inapplicable the rule heretofore announced by this court that there is no necessity of submitting to the jury specifically alleged injuries where the claimant sought damages for total and permanent disability. In principle, we have the same situation as confronted the Court in Southern Underwriters v. Parker, Tex.Civ.App., 129 S.W.2d 738 (1939), wr. ref. This case was approved by this court in the case of Southern Underwriters v. Boswell, 138 Tex. 255, 158 S.W. 2d 280 (1942), and again in the case of Maston v. Texas Employers' Insurance Association, 160 Tex. 439, 331 S.W.2d 907 (1960). The reasons for the holdings in the Boswell case are set out in the opinion, and quoted with approval in the Maston case. The reasons will not be again repeated.

In a case such as this, it is sufficient to say that if the insurer desires to limit the claimant's recovery to the compensation recoverable under the provisions of Section 12 or seeks to otherwise separate the effects of general and specific injuries, the burden rests with the insurer to either request appropriate special instructions to the jury, in connection with the general injury issue, or plead, prove and secure jury findings so limiting the claimant's recovery. Since Aetna has failed to do either, it cannot now complain of the judgment entered by the trial court under the provisions of Section 11, supra. See United Benefit Fire Insurance Company v. Stock, Tex.Civ.App., 344 S.W.2d 941 (1961), no wr. hist.; Matthews v. General Accident Fire and Life Assurance Corporation, 161 Tex. 622, 343 S.W.2d 251 (1961); Rule 279, Texas Rules of Civil Procedure.

The judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.