AMERICAN MOTORISTS INSURANCE CO.-
Appellant,

v.

J. R. ELLISON, Appellee.

No. 4027.

Court of Civil Appeals of Texas.

Waco.

Dec. 20, 1962.

Rehearing Denied Jan. 17, 1963.

———◆———

Jones, Boyd, Westbrook & Lovelace, Waco, for appellant.

Gordon Wellborn, Houston, Phenix & Keeling, Rex Houston, Henderson, L. L. Geren, Carl Cannon, Groesbeck, for appellee.

TIREY, Justice.

This is a compensation case. On the verdict the Court set aside the award of the Industrial Accident Board and decreed that Ellison recover from American Motorists Insurance Company the sum of $2106.-30, representing past due compensation for 59 weeks through the 12th day of December 1961 (the company being given credit for 22 weeks compensation previously paid); that Ellison recover the further sum of $9947.12 as compensation in a lump sum for future total disability after allowing the statutory discount. It approved his attorneys' contract and out of the sum awarded to Ellison, awarded to his attorneys $3616.-03; and further awarded $140.00 for medical expenses. The judgment provided for 4% interest as provided in the statute and taxed all costs against American Motorists Insurance Company.

The judgment is assailed on six (6) points. One is that "The Court erred in failing to submit the ultimate controlling issues essential to sustain its judgment for plaintiff for general injury, or issues from which it could be determined whether plaintiff's incapacity resulted from a specific injury, or a specific injury which extended to and affected other portions of his body." Pertinent to this discussion the claimant alleged substantially that he received serious injuries to his right foot, leg, heel and low back which produced a general injury to his body and which has caused a general debility to his body, and that he is totally and permanently disabled as a result of the injuries he received. Claimant further alleged that if it be found that he actually received a specific injury or an injury only to a specific member of his body then in the alternative he alleged that the injuries to the specific member of his body became infected and same has moved into the muscles of his right leg and into his hip, and that the original injury and the effects thereof have caused his low back, his spinal, muscular and skeletal system to become affected and disabled thereby, disabling him generally and producing a general disability to his body. Issue One of the Court's charge complained of is:

"Do you find from a preponderance of the evidence that J. R. Ellison sustained an injury to his body on or about the 24th day of May, 1960?"

To which the jury answered "Yes".

In the Court's charge we find this instruction:

"By the term 'injury' as used in this charge is meant damage or harm to the physical structure of the body and such diseases or infections as naturally result therefrom, or the excitement, acceleration or aggravation of any disease previously or subsequently existing, by reason of such damage or harm to the physical structure of the body."

In Appellant's brief we find the following statements:

"* * * plaintiff below, alleged by alternative pleading that he suffered a general injury to his body, a specific injury, and a specific injury which extended to and affected his body generally, resulting in total and permanent disability.

*    *    *    *    *    *

"From the Court's charge and the answers thereto in this case, it is impossible to tell whether the jury found that plaintiff-appellee suffered a specific injury to his right foot and heel, or a specific injury which extended to his body generally, or simultaneous general and specific injuries. The appellant admits, and has at all times admitted, that appellee sustained a specific injury to his right foot and heel, but denies the general injury alleged by appellee. The Court's charge, however, does not distinguish between these possibilities, nor does it submit the controlling issues necessary to sustain the Court's judgment of a general injury for appellee."

■ It is our view that appellant's contention was foreclosed against it by our Supreme Court in Southern Underwriters v. Boswell, 138 Tex. 255, 158 S.W.2d 280, in which cause our Supreme Court carefully reviewed the previous decisions of the Courts of Civil Appeal pertinent to the point raised by appellant, and held contrary to appellant's contention. Issue One of the Court's charge in this cause follows (except for the omission of the words "an accidental" to which there was no exception) the form of the issue suggested by the Supreme Court in the Boswell case. Our Supreme Court in Maston v. Texas Employers' Ins. Ass'n, 160 Tex. 439, 331 S.W.2d 907, adhered to the doctrine announced in the Boswell case, supra. Our Supreme Court again, on December 5, 1962, in McCartney v. Aetna Casualty & Surety Co., 362 S.W.2d 838, reaffirmed the doctrine announced in the Boswell and the Maston cases, supra, Aetna Casualty & Surety Co., Tex.Civ.App., 355 S.W.2d 264. But, it is appellant's contention that it is entitled to a reversal under the doctrine announced by our Supreme Court in Texas Gen. Indemnity Co. v. Scott, 152 Tex. 1, 253 S.W.2d 651. We think a careful reading of the Scott case, and the other cases here cited, shows that the Scott case has no application to the case at bar because the Scott case was not submitted according to the rule announced in the Boswell case, supra, as was the case at bar, and the other cases here cited. The Court submitted the issue as to whether incapacity was confined to loss of use of the foot. Accordingly, Point One is overruled.

Appellant's Points 2 and 3 are to the effect that the Court erred: (1) In overruling its plea to the jurisdiction of the Court and its plea in abatement on the ground of appellee's failure to give notice of his intention not to abide by the award of the Board within 20 days from such award; (2) In refusing to submit its requested Special Issues 16 and 17 inquiring whether the appellee gave notice and filed his claim for an alleged back injury within the statutory time limits. As we understand Points 2 and 3 they assert error because the Court refused to submit its requested Issues 16 and 17 inquiring if appellee gave notice and filed claim for back injury within 6 months from May 24, 1960. The record shows that appellee filed his initial claim for compensation on September 12, 1960; that on May 24, 1960, his right foot caught in between motor clutch and guard, and cut his heel and bruised his toes and twisted his ankle. On January 27, 1961, the Board entered an order awarding appellee 22 weeks of compensation for total disability and $3.50 per week for 103 weeks representing 10% permanent loss of use of the foot. On February 2, 1961, appellee filed written application with the Board to tender an amended claim. We quote the pertinent parts:

"Comes now J. R. Ellison and within twenty days after the date of the award made by the Industrial Accident Board in this cause, on the 27th day of January, 1961, and makes the following facts known to this Board:

"1. That he herewith tenders an amended claim for compensation.

"2. That he respectfully asks this Honorable Board to pass on this

amended claim immediately in order that his rights might be protected.

"3. He would respectfully show unto this Honorable Board that since the filing of his original claim a change of conditions has occurred; that the injuries he received on the 24th day of May 1960, have now brought about a condition necessitating surgery; that the condition brought about has enlarged his injuries and said injuries have now extended to his entire right foot and leg and which injuries, infection and previous surgery which has occurred produces a general injury of which he now desires this Honorable Board to pass upon.

"WHEREFORE, claimant, J. R. Ellison, respectfully requests this Honorable Board: (1) to permit him to file his amended claim as herein tendered; (2) that this Honorable Board set aside the award rendered in this cause on the 27th day of January, 1961, and render a new or an amended award as this Honorable Board finds the facts to be; (3) to enter such orders that may be necessary and proper within twenty days from the 27th day of January, 1961, in order that the rights of all parties might be protected."

On February 7, 1961, the Board set aside its award of January 27, 1961, and advised the appellee and his attorneys that the award of January 27, 1961, was not a final award and was not appealable and, thereafter, on March 14, 1961, entered an award that a change of condition had been found and awarded appellee 22 weeks of total incapacity and 10% loss of the use of the leg being $3.50 per week for 178 weeks. The appellee, on March 17, 1961, notified the Board that he would not abide by the award and within 20 days filed suit in the District Court of Limestone County.

It is appellant's position that the Board found a change of condition which

extended to the leg only, and since the evidence failed to show that there had been a change in the appellee's condition, and that since the appellee did not give notice of his intention not to abide by the ruling of the Board within 20 days from January 27, 1961, that its plea to the jurisdiction should have been sustained. As we understand appellant's position, its view is grounded on the authority of Hartford Accident and Indemnity Company v. Choate, 126 Tex. 368, 89 S.W.2d 205, Com.App., opinion adopted, and authorities there cited. We overrule this contention. The amended claim filed by appellee did allege a change in his condition, and that he had sustained a general injury, and we believe that under the liberal construction applied to the Employers Liability Act that appellee had the right to appeal from this award of the Board, and that when he filed his suit in the district court of Limestone County that that Court had appellate jurisdiction to determine whether or not appellee had sustained a general injury. The opinion in the Choate case, supra, as a basis for its decision, points out: "The other injuries to other parts of his body did not flow or result from the specific injury to the eye, nor is it so contended." We think the amended claim here is exactly to the contrary, and that the general injury has sufficient support in the evidence. Evidence was tendered showing complaints of back pain by the claimant while in the hospital within a week after the injury; that the original injury was not just a blow to the right heel and foot, but was actually a fall and a twisting of the entire body, and the evidence finally showing from the medical witnesses of an actual back injury.

Appellant further complains that Issues 27 and 28 of the Court's main charge are immaterial and that they are not supported by the evidence. These issues are:

"27. Do you find from a preponderance of the evidence, if any, that there was not a substantial change in plain-

tiff's condition, subsequent to January 27, 1961, and prior to March 14, 1961?" To which the jury answered: "There was a change."

"28. Do you find from a preponderance of the evidence that at the time of submitting his claim to the Industrial Accident Board and prior to the hearing of January 27, 1961, plaintiff, J. R. Ellison, was mistaken as to the nature of the injuries, if any, to his right foot; that is, whether the same extended to and affected other parts of his body?" To which the jury answered: "He was mistaken."

We find that Issue 27 of the Court's main charge is in the exact language of appellant's requested issue 28; that issue 28 of the Court's main charge is in the exact language as appellant's requested issue No. 29. It is our view that the evidence is sufficient to support the jury's answer to each of the foregoing issues, and accordingly appellant's Points 2 and 3 are overruled.

Appellant's 4th Point is:

"The Court erred in failing to submit issues from which it could be determined whether appellee's incapacity, if any, resulted from a prior condition in no way connected with his employment."

We have carefully considered the Court's charge with reference to the above matter, and we think that it is covered and the charge is in approved form.

Issue 22 is:

"Do you find from a preponderance of the evidence, if any, that plaintiff's incapacity, if any, is confined solely to the right leg at or above the knee?" To which the jury answered: "No."

Issue 23 is:

"Do you find from a preponderance of the evidence that the prior injury of April 19, 1953, has not contributed to the incapacity, if any you have found to plaintiff?" To which the jury answered: "It has not contributed." (Since the jury answered the above issue as here quoted it was instructed not to answer Issue No. 24).

Issue 25 is:

"Do you find from a preponderance of the evidence, if any, that the incapacity to plaintiff's body generally is due solely to the use by plaintiff of his right foot, at or below the knee?" To which the jury answered: "No."

Issue 26 is:

"To you find from a preponderance of the evidence, if any, that plaintiff's incapacity, if any, is due solely to the use by plaintiff of his right leg?" To which the jury answered: "No."

Going back to appellant's requested issues, we find that its requested Issue No. 23 was given by the Court in his main charge and is numbered 22, heretofore quoted.

We find that appellant's requested special issue 24 was given by the Court in the exact language in its main charge, but under the Court's instruction the jury did not answer that issue.

Since we are of the view that the Court properly submitted the matter complained of, and since the answers of the jury to the foregoing issues are supported by sufficient evidence, Point 4 is overruled.

Appellant's 5th Point is that the trial Court erred " * * * in allowing the jury to speculate upon and consider matters which are not properly cognizable in this case, such as alleged pain, disc surgery and spinal fusions, medical services not claimed in compliance with the Workmen's Compensation Act, an improper demonstration of appellee's foot, and interpretations of medical symbols by a lay witness."

It is true that pain and suffering are not compensable under the Compensation Act, but we do not understand the cases to hold that the question of pain and suffering accompanying an injury should be excluded completely from the jury's consideration when it is attempting to determine the exact extent and duration of disability to perform labor. It is our view that the amount of pain accompanying an injury is quite important in determining whether or not the injury is disabling, but, of course, the pain and suffering is not compensable, and this is a matter that is controlled by the charge. We think our view above expressed is not in conflict with the factual situation detailed in Traders & Gen. Ins. Co. v. Rockey, Tex.Civ. App., 278 S.W.2d 490; Hood v. Tex. Ind. Ins. Co., 146 Tex. 522, 209 S.W.2d 345; Bailey v. Amer. Gen. Ins. Co., 154 Tex. 430, 279 S.W.2d 315; Gen. Acc. Fire and Life Assur. Corp. v. Murphy, Tex.Civ.App., 339 S.W.2d 392, Pt. 3, (n. r. e.); Coleman v. Hartford Acc. and Ind. Co., Tex.Civ. App., 297 S.W.2d 236, Pt. 4; Denbow v. Standard Acc. Ins. Co., 143 Tex. 455, 186 S.W.2d 236; Tex. Employers' Ins. Ass'n v. Polk, Tex.Civ.App., 269 S.W.2d 582, (n. r. e.); Consolidated Underwriters v. Langley, 141 Tex. 78, 170 S.W.2d 463; Employers Mutual Liability Ins. Co. of Wis. v. Gallardo, Tex.Civ.App., 359 S.W.2d 933, (n. r. e.).

Appellant further complains about special issues 14, 15 and 16 of the Court's main charge inquiring whether services of Dr. Bone were reasonably required by appellee and whether appellant refused to furnish those services, and whether $75.00 is a reasonable charge for the services. Issue No. 17 asked the same question regarding the services of Dr. DeCharles. Issue No. 19 inquired whether $65.00 was a reasonable charge for his services. Appellant relies on the doctrine stated in Security Union Ins. Co. v. McClurkin, Tex.Civ.App., 35 S.W.2d 240, writ, ref., and because of the 1957 amendment to Art. 8306, Sec. 7, Vernon's Ann.R.C.S.

We find in the statement of facts that the insurance adjuster told plaintiff, "If I got a release (from the doctor) I would have to be responsible for my medical care thereafter, that they couldn't be responsible for it." Dr. Smith, (the insurance company's medical witness) testified to the effect that he advised the insurance company in December 1960, at the time he released plaintiff, that he would have to watch him for another six months. at least before he could be sure of his permanent condition. In the report of Dr. Bone of February 3, 1961, which was filed with the Industrial Accident Board and introduced in evidence, the report stated, among other things: "Treatment is being continued." Appellant complains of plaintiff removing his shoe in the courtroom and. demonstrating the use of his foot to the jury and showing how the injury affected his walking. It is true that appellant objected to this procedure, but we see nothing about the demonstration to inflame the minds of the jury concerning the injury. Moreover, appellant's counsel on cross-examination asked plaintiff to leave the witness stand, and stand and walk before the jury, which was the same type of demonstration as used on direct examination. Appellant's Point 5 is overruled.

Appellant's 6th Point is that the Court erred " * * * in allowing appellee's own examining doctor, who was not shown to have treated appellee, to testify concerning appellee's subjective symptoms."

The record shows that Dr. De-Charles saw appellee more than once. He testified specifically:

"Q. Have you had occasion to examine and treat J. R. Ellison?

"A. Yes.

"Q. Did you take a history from Mr. Ellison when you first saw him?

If you did, state whether or not the history was taken from him to be used by you as his physician in diagnosing his condition and treating him?

"A. Yes."

He further testified to the effect the x-rays were taken for the purpose of diagnosing and treating Ellison, and that he gave medicine to Ellison and prescribed a built-up heel for his shoe, and he testified further to the effect that he was asked to treat Ellison on the occasion of his first visit.

It is our view that appellant's 6th point does not present error, and it is overruled.

We have given our most careful consideration to appellant's pleadings, its exceptions to the charge and the special issues it requested, and we are of the view that the Court's charge correctly submitted the issues tendered by the pleadings and the evidence, and that the assigned errors of appellant with reference thereto are not well founded, and each is overruled.

The judgment of the trial court is affirmed.