NORTHWESTERN NATIONAL INSUR-
ANCE COMPANY, Appellant,

v.

Melvin C. KIRCHOFF, Appellee.

No. 84.

Court of Civil Appeals of Texas.

Houston (14th Dist.).

April 10, 1968.

Vincent W. Rehmet, Barrow, Bland & Rehmet, Houston, for appellant.

Harold Lloyd, Thomas Vaughn, Jr., Houston, for appellee.

TUNKS, Chief Justice.

The appellee, by a motion for rehearing, challenges the accuracy of some of the language of our original opinion. Since the language referred to has no effect on the disposition of the appeal, our original opinion is withdrawn and this opinion, omitting the questioned language is substituted.

This is a workmen's compensation case. The parties will be referred to as plaintiff and defendant, as in the trial court.

The jury found that the plaintiff sustained an accidental injury to his back on October 6, 1964, which injury was a producing cause of total and permanent incapacity; that a prior compensable injury to the plaintiff's back was a producing cause of 75% of plaintiff's incapacity; and that there was "good cause" for plaintiff's failure to file his claim until April 29, 1965, six months and 23 days after his alleged injury. The trial court rendered judgment for the plaintiff on this verdict and certain stipulations made by the parties. The principal questions raised on this appeal are based on the defendant's points of "no

evidence" and "insufficient evidence" to support the jury's findings of accidental injury, the extent and duration of incapacity and the existence of good cause. Also the defendant questions the formula used by the trial court in applying Article 8306, Sec. 12c, the Subsequent Injury Statute, so as to adjust for the extent to which plaintiff's prior injury contributed to his incapacity.

The evidence showed that the plaintiff, in March, 1963, while working for the same employer, sustained an injury to his back. That injury resulted in an operation in August, 1963, in which operation it was sought to fuse and immobilize some of his vertebrae. After that operation, the plaintiff was off work for about three months and then returned and did light work. Plaintiff's employer at that time carried workmen's compensation insurance with Hardware Mutuals—Sentry Life, who paid the plaintiff compensation and paid for the medical treatment he received.

In this case the plaintiff alleged that on October 6, 1964, while lifting a carton weighing 58 pounds, he again injured his back. On that date he went back to see the doctor who had done the surgery. That doctor, called as a witness by the defendant, concluded that the August, 1963 surgery had been unsuccessful insofar as it sought a fusion and immobilization of the vertebrae. No complete fusion had been accomplished. There upon the doctor recommended, and the plaintiff, on October 21, 1964, submitted to a second operation again seeking to effect the fusion. Following the second operation, the plaintiff was confined to his bed for four or five months. He was off work for more than a year and then went to work as a door-to-door salesman. He worked at that job for about two months and then went to work as a shipping clerk, in which job his duties were clerical and he did no bending or lifting. Shortly before the trial began, he again changed jobs and was working as a nightwatchman at a private residence.

There is ample testimony from the plaintiff, his wife, a neighbor and fellow workers from which the jury could find that continuously, from October 6, 1964, plaintiff had suffered from such incapacity as would prevent him from performing the usual tasks of a workman in such manner as to be able to obtain and retain employment. Plaintiff pleaded and argued that his incapacity occurred on October 6, 1964, because the lifting of the carton caused the fusion in his low back to break loose. The only medical expert to testify was the doctor who had done both operations. That doctor testified that no breaking loose of any fusion occurred on October 6, 1964, because no fusion had resulted from the August, 1963 operation. The doctor also testified that, had there been a fusion following the first operation, the lifting of the carton, as described by the plaintiff, would not have caused a breaking loose. The defendant argues that the question as to whether the fusion occurred and was subsequently broken, was such a question which could be answered only from the testimony of a medical expert and that the opinion testimony of the doctor was, therefore, conclusive on that question. The defendant cites as authority for that proposition Hancock Mut. Life Ins. Co. v. Cooper, Tex.Civ.App., 386 S.W.2d 208, no writ hist.; Travelers Ins. Co. v. Blazier, Tex.Civ.App., 228 S.W.2d 217, writ of error dismd.; and Scott v. Liberty Mut. Ins. Co., Tex.Civ.App., 204 S.W.2d 16, writ ref., n. r. e. Based on that proposition, the defendant contends that the jury's finding that the plaintiff sustained an injury on October 6, 1964, is not supported by any evidence or alternatively, is not supported by sufficient evidence.

■ We neither accept nor reject the general proposition stated by the defendant. A ruling on its validity is not necessary to this appeal. It was not necessary for the plaintiff to prove that a fusion had occurred and then been broken loose in order to prove that he had sustained an injury to his back. A jury finding that he sus-

tained an injury is not necessarily based on the belief that such a break occurred. In fact, it is obvious from the doctor's testimony that the plaintiff's back would be more susceptible to injury if no fusion occurred after the first operation. While the doctor testified that the lifting described by the plaintiff would not break loose a fusion, he admitted that such activity would "disturb" his back if the fusion was not complete.

 In his trial pleading, the plaintiff alleged that on the occasion in question, he sustained an injury to his back and his body generally. He then alleged the facts of his prior operation and that in lifting the carton, the fusion in his back was broken loose. The first of these two allegations was the controlling one and, as noted above, there was plenty of evidence to discharge the burden of proving it. The second allegation was evidentiary and surplusage. The plaintiff was not required to prove the mechanical process by which the physical structure of his body was damaged or harmed, nor, having made that evidentiary allegation, was he confined or limited to proving that his general injury to his back was so brought about. McCartney v. Aetna Cas. & Sur. Co. (Tex. Sup.Ct.), 362 S.W.2d 838; Southern Underwriters v. Boswell, 138 Tex. 255, 158 S.W.2d 280; Texas Emp. Ins. Ass'n v. Rogers, Tex.Civ.App., 368 S.W.2d 21, err. ref., n. r. e.; American Motorists Ins. Co. v. Ellison, Tex.Civ.App., 364 S.W.2d 83, err. ref., n. r. e.

Those points of error contending that the jury's findings that the plaintiff sustained an injury producing total and permanent incapacity are supported by no evidence or insufficient evidence are overruled.

A Mrs. Brown was one of the owners of the company at which the plaintiff was working at the time of his March, 1963 injury and at the time of the October 6, 1964 injury on which this suit is based. Mrs. Brown kept the records of the company. She had taken care of the filing of the plaintiff's claim for compensation following his 1963 injury.

Following the plaintiff's October, 1964 operation, while he was still confined to his bed, Mrs. Brown came to his home. On that occasion the plaintiff and Mrs. Brown discussed the filing of his claim for compensation. Mrs. Brown told the plaintiff that everything was being taken care of. This fact was developed by the testimony of the plaintiff who further testified that he relied on such representation. Mrs. Brown testified that she might have gone to the plaintiff's home during the time of his confinement to bed. She testified that in keeping with the policy of her company, she prepared the papers to be filed in connection with the compensation claims of the company's employees and that she had prepared and filed the claim following plaintiff's 1963 injury. She testified that she, or someone in her office, prepared the claim that was filed on April 29, 1965. The employer had changed compensation carriers at about the time of plaintiff's injury and there was some question in Mrs. Brown's mind as to which company had coverage. This was the reason for Mrs. Brown's delay in filing the plaintiff's claim.

 In response to special issues, the jury found that Mrs. Brown told the plaintiff that she would timely file his claim for compensation, that the plaintiff relied on such representation, and that such reliance constituted "good cause" for not filing the claim until it was filed. The usual and accepted definition of "good cause" was given and the defendant did not object to it.

We are of the opinion, and so hold, that there was sufficient evidence to support those findings and that the court properly concluded that good cause existed. As authority for those holdings we cite the following: Continental Cas. Co. v. Abercrombie, Tex.Civ.App., 413 S.W.2d 409, writ ref., n. r. e.; Consolidated Underwriters v. Pittman, Tex.Civ.App., 388 S.W.

2d 315, no writ hist.; Gibbs v. Texas Emp. Ins. Ass'n., Tex.Civ.App., 378 S.W.2d 349, writ ref., n. r. e.; and United States Fidelity & Guaranty Co. v. Herzik, Tex.Civ. App., 359 S.W.2d 914, writ ref., n. r. e.

The fact that Mrs. Brown had, on the occasion of the previous injury to plaintiff, complied with her promise to take care of the filing of plaintiff's claim, we consider to be a fact which the jury could consider in weighing the evidence as to the diligence and prudence of the plaintiff in relying on her promise on this occasion. It is also noteworthy that the delay here was a comparatively short one. The degree of diligence which would be exercised by a prudent person under a given state of facts, might permit a delay of less than seven months when the same care would not permit a delay of considerably longer period.

The trial court computed the amount of the judgment in favor of the plaintiff, allowing for the extent (75%) which his earlier back injury contributed to his incapacity. In such computation, the court applied the formula approved in Consolidated Cas. Ins. Co. v. Jackson, Tex. Civ.App., 419 S.W.2d 232, writ ref., n. r. e., and Aetna Cas. & Sur. Co. v. Depoister, Tex.Civ.App., 393 S.W.2d 822, writ ref., n. r. e. It was stipulated that the plaintiff before his injury had an average weekly wage of $144.00. The court, by the application of that formula, correctly concluded that in this case the plaintiff had a weekly compensation rate of $21.60. The defendant's point of error directed to that computation is overruled.

In addition to workmen's compensation coverage carried by the plaintiff's employer, it also carried a group insurance policy with another company for the benefit of its employees. That group policy excluded incapacity resulting from an injury incurred in the course and scope of the employee's employment in such a manner as to be compensable under the Workmen's Compensation Act. Mrs. Brown prepared a claim form to be signed by the plaintiff claiming benefits under this group policy. The plaintiff signed the claim's form. It was filed and benefits of $300.00 per month were paid to the plaintiff for a year under that group policy provision. The defendant argues that the plaintiff, in making this inconsistent claim, made such an election of remedies as to bar recovery of workmen's compensation or that, because of such inconsistent claim, the plaintiff is estopped to claim workmen's compensation.

We overrule such point of error. In the first place the plaintiff did not make an election to use one of two inconsistent remedies; he, rather, claimed a right inconsistent to his claim for workmen's compensation. His inconsistent claims were not against the same party. There was no privity as between the two parties against whom the inconsistent rights were claimed. The plaintiff's claim against the group insurance carrier did not deprive this defendant compensation carrier of any subrogation rights nor otherwise harm the defendant nor cause it to lose any right of any character. The statement of inconsistent facts incorporated in the plaintiff's claim against the group insurance carrier was not a statement made to the defendant on which the defendant relied to its detriment. Under those circumstances neither the doctrine of election of remedies nor estoppel is applicable to bar the plaintiff's claim for compensation from defendant. See Russell v. Sarkeys (5th Cir.), 286 F.2d 736; Crutcher v. Eaves, Tex.Civ.App., 259 S.W. 970, err. dismd.; Constitution Indemnity Co. of Philadelphia v. Armbrust, Tex. Civ.App., 25 S.W.2d 176; 28 C.J.S. Election of Remedies § 8, p. 1076. The inconsistent statement in plaintiff's claim under the group policy was admissible as evidence against him, but that claim was not a bar to this suit.

The defendant also argues that the jury's finding on which a lump sum judgment was rendered is not supported by the evidence. We hold that there was evidence to support the findings. No useful purpose

would be served by reciting that evidence, since, on that issue, each case must stand on its own facts.

Our earlier opinion in this case, wherein, we affirmed the appeal, is withdrawn and the judgment of the trial court is affirmed. Costs of appeal are adjudged against the appellant.