**Tom Turner BANKS, Appellant,**

v.

**The MILLERS MUTUAL FIRE INSUR-ANCE COMPANY OF TEXAS, Appellee.**

**No. 8072.**

Court of Civil Appeals of Texas,
Texarkana.

Feb. 8, 1972.

Guinn D. Tate, Wellborn & Houston, Henderson, for appellant.

Mike Hatchell, Ramey, Brelsford, Flock, Devereux & Hutchins, Tyler, for appellee.

CHADICK, Chief Justice.

This is a Workmen's Compensation Law case.

Tom Turner Banks was injured when he jumped down into the bed of a truck he was helping to unload for his employer, Bloch Metals, Inc. Prerequisite claim proceedings before the Industrial Accident Board were exhausted, and Banks instituted a suit in the District Court of Morris County to recover Workmen's Compensation Law benefits from his employer's compensation insurance carrier, The Millers Mutual Fire Insurance Company of Texas.

Banks' trial pleading alleged that he "seriously injured his right knee, leg, hip and back, and sustained a permanent disability," and prayed for "judgment against the defendant for total and permanent disability benefits, medical benefits," etc. Regardless of a construction of the pleadings that might be arguable, in the trial Banks undertook to prove a general injury and to recover compensation on that basis. The purport of his pleading and his trial strategy is confirmed by the trial record and the statement in Banks' brief in this court that "he alleged that as a result of his injuries he sustained a total disability which was permanent, and that he was entitled to workmen's compensation benefits at the rate of $49.00 per week for 401 weeks in a lump sum."

The insurance company plead that Banks' injury was to his right knee, and that such specific injury and its effects, as well as any incapacity and disability that ensued, were limited to and confined to Banks' right knee. The insurer's defensive strategy was to prove and secure a jury verdict that Banks suffered a specific injury, thereby negating a general injury.

The appellant has briefed three points of error. The first presents for review the failure of the trial judge to disregard Special Issue No. 18 "because there was no evidence to support the jury's affirmative answer to such issue." The second presents as error the trial court's failure to disregard Special Issue No. 18 "because such issue became completely immaterial

upon the jury entering an affirmative answer to Special Issue No. 17." The third point requires a review of the action of the trial court in rendering a judgment denying Banks a recovery, "because under the verdict of the jury the plaintiff was entitled to a judgment in his favor." Consideration of these points will be in reverse order.

The trial judge submitted twenty Special Issues, the first sixteen presented Appellant Banks' theory of recovery, while the remaining issues, 16 through 20, submitted the insurer's defense. Appellant Banks lodged objections to the submission of the defensive issues. Initial discussion requires examination of all issues submitted. These Special Issues without accompanying definitions or instructions are as follows, to-wit:

"SPECIAL ISSUE NO. 1—Do you find from a preponderance of the evidence that Tom Banks sustained an injury (as that term is defined herein) on or about July 28, 1970?

Answer 'Yes' or 'No'. ANSWER: Yes

If you have answered Special Issue No. 1 'Yes', and only in that event, then answer:

"SPECIAL ISSUE NO. 2—Do you find from a preponderance of the evidence that such injury, if any, was an accidental injury?

Answer 'Yes' or 'No'. ANSWER: Yes

If you have answered Special Issue No. 2 'Yes', and only in that event, then answer:

"SPECIAL ISSUE NO. 3—Do you find from a preponderance of the evidence that such injury, if any, was sustained in the course of his employment with Bloch Metals, Inc.?

Answer 'Yes' or 'No'. ANSWER: Yes

If you have answered Special Issue No. 3 'Yes', and only in that event, then answer:

"SPECIAL ISSUE NO. 4—Do you find from a preponderance of the evidence that the injury, if any, to Tom Banks naturally resulted in his incapacity in any percentage for any length of time?

Answer 'Yes' or 'No'. ANSWER: Yes

If you have answered Special Issue No. 4 'Yes', and only in that event, then answer:

"SPECIAL ISSUE NO. 5—Do you find from a preponderance of the evidence that such incapacity, if any, was total for any length of time:

Answer 'Yes' or 'No'—ANSWER: Yes

If you have answered Special Issue No. 5 'Yes', and only in that event, then answer:

"SPECIAL ISSUE NO. 6—When do you find, from a preponderance of the evidence, that such total incapacity, if any, began or will begin?

Answer by giving the date, if any.

ANSWER: 28 July 1970

If you have answered Special Issue No. 5 'Yes', and only in that event, then answer:

"SPECIAL ISSUE NO. 7—Do you find from a preponderance of the evidence that such total incapacity, if any, was or is permanent or temporary? Answer 'Permanent' or 'Temporary'. ANSWER: Temporary

If you have answered Special Issue No. 7 'Temporary' and only in that event, then answer:

"SPECIAL ISSUE NO. 8—From a preponderance of the evidence how long do you find such total incapacity, if any, has continued or will continue?

Answer in number of weeks, if any.
ANSWER: 8 weeks

If you have answered Special Issue
No. 4 'Yes', and only in that event, then
answer:

"SPECIAL ISSUE NO. 9—Do you
find from a preponderance of the evi-
dence that Tom Banks' incapacity, if
any, was or is partial for any length of
time? Answer 'Yes' or 'No'—AN-
SWER: Yes.

If you have answered Special Issue
No. 9 'Yes', and only in that event, then
answer:

"SPECIAL ISSUE NO. 10—When do
you find, from a preponderance of the
evidence, such partial incapacity, if any,
began or will begin?

"Answer by stating the date, if any.
ANSWER: 24 Sept. 1970.

"If you have answered Special Issue
No. 9 'Yes', and only in that event, then
answer:

"SPECIAL ISSUE NO. 11—Do you
find from a preponderance of the evi-
dence that such partial incapacity, if any,
was or is permanent or temporary?

Answer 'Permanent' or 'Temporary'
ANSWER: Permanent

If you have answered Special Issue
No. 11 'Temporary,' and only in that
event, then answer:

"SPECIAL ISSUE NO. 12—From a
preponderance of the evidence, how long
do you find such partial incapacity, if
any, has continued, or will continue,
from the date of its beginning, or from
the termination of the total incapacity, if
any?

Answer in number of weeks, if any.
ANSWER: No answer

If you have answered Special Issue
No. 9 'Yes', and only in that event, then
answer:

"SPECIAL ISSUE NO. 13—What do
you find, from a preponderance of the
evidence, to be the average weekly wage
earning capacity of Tom Banks, if any,
during the existence of such partial inca-
pacity, if any?

Answer by stating the amount in dol-
lars and cents, if any. ANSWER:
$65.00

"SPECIAL ISSUE NO. 14—Do you
find from a preponderance of the evi-
dence that the services rendered to Tom
Banks by Dr. E. L. Mahon and Travis
Clinic were reasonably required to re-
lieve Tom Banks from any of the ef-
fects, if any, naturally resulting from the
injury, if any, sustained by him on or
about July 28, 1970?

Answer 'Yes' or 'No'—ANSWER:
No

If you have answered Special Issue
No. 14 'Yes', and only in that event, then
answer:

"SPECIAL ISSUE NO. 15—Do you
find from a preponderance of the evi-
dence that The Millers Mutual Fire In-
surance Company of Texas failed to fur-
nish such services to Tom Banks?

Answer 'Yes' or 'No'—ANSWER:
No answer

"SPECIAL ISSUE NO. 16—Do you
find from a preponderance of the evi-
dence that the sum of $112.50 is a rea-
sonable charge for such services, if any,
of Dr. Mahon and Travis Clinic?

Answer 'Yes' or 'No'—ANSWER:
Yes

"SPECIAL ISSUE NO. 17—Do you
find from a preponderance of the evi-
dence that the incapacity of Tom Banks,
if any, has been or will be limited to the
loss of the use of the right leg?

Answer 'Yes' or 'No'. ANSWER:
Yes

"SPECIAL ISSUE NO. 18—Do you
find from a preponderance of the evi-

dence that the incapacity of Tom Banks, if any, is caused solely by his use or attempted use of his right leg?

Answer 'Yes' or 'No'. ANSWER: Yes

"SPECIAL ISSUE NO. 19—Do you find from a preponderance of the evidence that the incapacity of Tom Banks, if any, has been or will be limited to the loss of the use of the right and left legs?

Answer 'Yes' or 'No'. ANSWER: No

"SPECIAL ISSUE NO. 20—Do you find from a preponderance of the evidence that the incapacity of Tom Banks, if any, is caused solely by his use or attempted use of his right and left leg?

Answer 'Yes' or 'No'. ANSWER: No"

In considering the third point of error, Special Issue No. 18 will be disregarded on the hypothesis that it is without support in the evidence and the jury's verdict on the remaining issues will be tested to determine whether or not appellant Banks is entitled to a judgment. The verdict, thus approached, clearly entitles Banks to a judgment unless Special Issue No. 17 defeats and debars it. Special Issue No. 17 becomes the cynosure of this appeal and its effect of controlling importance. The Texas Workmen's Compensation Law in its broad design divides compensable injuries into two classes: *General injuries* to the body governed by Tex.Rev.Civ.Stat. Anno. art. 8306, Secs. 10 and 11 (1967) and injuries, by custom called *specific injuries*, that produce the loss of, or loss of the use of, specified bodily members and faculties which are scheduled under Section 12 of the same article. Texas General Indemnity Co. v. Scott, 152 Tex. 1, 253 S. W.2d 651 (1952); 63 Tex.Jur.2d Workmen's Compensation, Sec. 165 (1962).

The plain language of Section 12 provided that the loss of the use of the right leg shall be compensated as therein provided. The jury, by finding that the incapacity of Tom Banks has been or will be limited to the loss of the use of the right leg, reached a verdict that Tom Banks' injury is one of a nature for which compensation is payable as scheduled in Section 12. The language of Section 12 does not purport to fix the location of a compensable injury on the workman's body, it simply says that *injuries* causing the loss of, or the loss of the use of, specified bodily members or faculties shall be compensated as therein provided. In McCartney v. Aetna Casualty & Surety Co., 362 S.W.2d 838 (Tex.Sup.1962), it is said: "* * * If the insurer desires to limit the claimant's recovery to the compensation recoverable under the provisions of Section 12 or seeks to otherwise separate the effects of general and specific injuries, the burden rests with the insurer to either request appropriate special instructions to the jury, in connection with the general injury issue, or plead, prove and secure jury findings so limiting the claimant's recovery." The record shows that the insurance company in the trial court undertook to follow *McCartney*, and "separate the effects of general and specific injuries." The jury's answer to Special Issue No. 17 made the separation.

Any judgment, entered upon the jury's verdict in this case, is required by Tex.R. Civ.P. 301 (1967) to conform to the pleadings, the nature of the case proved and the jury's verdict upon the special issues. Banks plead and sued for benefits payable as a result of a general injury, evidence was produced by both parties and the jury's verdict was that Banks' injury caused an incapacity limited to the loss of the use of the right leg, a loss compensable as a specific injury. Banks did not alternatively, or otherwise, sue to recover compensation for incapacity allowable under Art. 8306, Sec. 12, and in the absence of a suit for recovery of *specific injury* compensation the trial judge properly held that he was not entitled to a recovery under the jury verdict. Though not in point, McCartney v. Aetna Casualty & Surety Co.,

supra, and Texas Employers' Ins. Ass'n v. Pearson, 67 S.W.2d 630 (Tex.Civ.App. Amarillo, 1934, writ dism'd) are instructive. No previously decided case precisely in point has been found, but the appellee insurance company urges Tex.R.Civ.P. 279 (1967); Hardegree v. American and Foreign Insurance Company, 449 S.W.2d 554 (Tex.Civ.App. Fort Worth, 1969, no writ); and Universal Underwriters Insurance Co. v. Potter, 411 S.W.2d 400 (Tex.Civ.App. Beaumont, 1966, writ ref'd, n. r. e) in support of the trial court judgment. The conclusions expressed, though more narrowly based, are in harmony with the cited rule and cases. Appellant's third point of error is overruled.

The first two points of error become immaterial under the views expressed and discussion will serve no purpose. The judgment of the trial court will be affirmed; appellant's motion for rehearing is overruled, and this opinion will be substituted for that heretofore filed on December 14, 1971.