**GULF INSURANCE COMPANY,**
Appellant,

v.

**R. B. HODGES, Appellee.**

No. 8468.

Court of Civil Appeals of Texas,
Amarillo.

Aug. 19, 1974.

**268**

John E. Vickers, Lubbock, for appellant.

Splawn Law Offices, Inc., Johnny Splawn, Lubbock, for appellee.

REYNOLDS, Justice.

Eliminating any loss of use of plaintiff's right hand as the sole cause of his incapacity, the jury found, and judgment was entered decreeing that plaintiff recover workmen's compensation benefits for, a general injury producing temporary total and permanent partial incapacity. Affirmed.

Seeking workmen's compensation benefits for total and permanent disability resulting from his twenty-five foot fall from a ladder to a concrete floor on September 27, 1971, plaintiff R. B. Hodges originally pleaded a general injury encompassing concurrent specific and general injuries to his body. Additional to a general denial, defendant Gulf Insurance Company answered that any incapacity suffered by Hodges was (1) total for only eight or nine days, or was (2) partial of temporary duration, or was (3) confined (a) to one or more fingers of his right hand, or (b) to his right hand, or (c) to his right arm.

Development of the evidence raised the issue of incapacitating general injury to Hodges' neck and right shoulder as well as issues of incapacitating injuries to his right arm and right hand. At the conclusion of the presentation of the evidence on September 12, 1973, Hodges moved for and was granted permission to amend his pleadings to alternatively allege, and to seek recovery for, total and partial loss of use of his right hand.

The trial court submitted the case to the jury first as a general injury [1] and, condi-

1. Corresponding to the numbered general injury special issues, the jury found that (1) Hodges received an accidental injury on or about September 27, 1971 (2) as an employee (3), in the course of his employment; that (4), such injury was a producing cause

tioned on the issue no. 14 finding that any incapacity of Hodges was caused solely by the loss of use to his right hand,[2] the remaining issues inquired as to the extent of such loss of use of his right hand.[3] Although Gulf made objections to the charge, no objections were levelled against the issues submitted, either as to form or propriety of submission, to determine the existence of either a general injury or incapacity caused solely by the loss of use of the right hand. However, Gulf requested the submission of, and the court refused to submit, a definition and two special issues tendered in the following language:

Requested definition: "An injury to a specific member does not 'extend to and affect' other parts of the body if the use or attempted use of the injured member merely results in pain or other subjective complaints in such other parts of the body without producing damage or harm to the physical structure of such other parts."

Requested issue no. 1: "Do you find from a preponderance of the evidence that the incapacity of R. B. Hodges, if any, is not caused solely by his use or attempted use of his right hand?

"Answer 'It is not caused solely by his use of his right hand,' or 'It is caused solely by his use of his right hand.' "

Requested issue no. 2: "Do you find from a preponderance of the evidence that the incapacity of R. B. Hodges, if any, following his injury on September 27, 1971, either has not been or will not

be limited to the loss of use of his right hand?

"Answer 'It has not been and will not be limited to his right hand,' or 'It has been or will be limited to his right hand.' "

The refused requests are made the subject matter of Gulf's first three points of error grouped for presentation. Viewing the case as, and arguing from the premise that it is a situation of, an extension of a right hand specific injury to a general portion of the body, Gulf contends that the refusal of the court to submit its requested definition and issues deprived it of its defense.

The extent of Gulf's presentation for entitlement to the definition requested is that the definition is exactly the one contained in 2 Texas Pattern Jury Charges 26.14 and that without it, the jury was not given any controlling guideline as to whether the incapacity was actually limited to the right hand. Apparently the requested definition of injury was tendered, absent any request for placement in the charge, for contextual relation with the general injury submission since the specificity in issue no. 14, reproduced in marginal note 2, involved incapacity and not injury.

The requested definition, as employed in 2 PJC 26.14, is a special instruction designed for use in connection with an issue that inquires whether, in a workmen's compensation claim for benefits for a general injury on allegations and proof that, a specific injury extended to and affected other

of total incapacity (5) beginning September 27, 1971, which (6) was temporary, (7) ending January 28, 1972; that (8) such injury produced partial incapacity (9) beginning January 28, 1972, which (10) is permanent, with a (12) reduction in earning capacity of $125 per week; and that (13) payment of compensation in weekly installments instead of a lump sum will result in manifest hardship and injury.

2. Issue no. 14 and the jury's answer read: "Do you find from a preponderance of the

evidence, that the Plaintiff's incapacity, if any you have found, was caused solely by the loss of use, if any, to the Plaintiff's right hand?
"Answer 'It was,' or 'It was not,' as you may find.
"ANSWER: It was not"

3. Having answered issue no. 14 "It was not," the jury was directed not to, and it did not, answer issues nos. 15–23 concerning the extent of loss of use of Hodges' right hand.

general parts of the body. In such connection, the instruction is suggested for use both in lieu of an issue asking whether the injury is not confined to the specific member of the body and as an effective presentation of the defense that, but without submission of an issue to determine if, the alleged general injury is solely the result of use or attempted use of the specific member of the body.

■ Distinguishably, Hodges never alleged, and the case was not submitted as, a specific injury that extended to and affected other parts of his body. Rather, Hodges alleged concurrent specific and general injuries and, alternatively, a specific injury to his right hand.

While Rule 277, Texas Rules of Civil Procedure, does authorize the inclusion of such definitions and instructions in the charge as shall be proper to enable the jury to render a verdict, the charge contained no "extend to and affect" issue to which the instruction requested could be properly related. Therefore, the tendered instruction not only was unnecessary, but its submission would have been improper for the jury's guidance in considering its verdict under the charge that was submitted. It follows that the court did not err in refusing to give the instruction.

Gulf further contends that the refusal of its requested two special issues prevented the jury's consideration of, and deprived Gulf of its right to, its pleaded and evidentially supported defense that any incapacity was limited to Hodges' right hand. On these points it is sufficient to state, without resolving the contradictory contentions of, or discussing the pertinence of the authorities respectively cited by, the parties, that the court did not err in refusing to submit the requested issues for a reason neither party mentioned.

Actually, there was no factual submission of the specific injury aspect of the case in that there were no issues to determine if Hodges suffered an injury to his right hand that produced incapacity. Issue no. 14 was not drafted to elicit either determination; instead, the issue merely inquired if the incapacity found, which the jury could find only as a result of the general injury submitted by the charge, resulted from loss of use of Hodges' right hand. Thus, in reality, the submission was that of a general injury.

■ To warrant, then, a verdict of an incapacitating general injury under the pleadings, Hodges not only had to show that the concurrent injuries to specific members and general portions of his body produced the general injury, but he had to go further and demonstrate by a preponderance of the evidence that his injury was not limited to, and that his incapacity was not caused solely by the loss of use of, his right hand. Gulf, of course, was attempting to separate the effects of any general injury from, and to limit any incapacity to, the effects of the injury to the right hand.

■ In a case so postured, it has been the rule since McCartney v. Aetna Casualty & Surety Company, 362 S.W.2d 838 (Tex.1962), that the workmen's compensation carrier has the burden to request a special instruction or issues which would limit the claimant's recovery to a specific injury. To this end, Gulf requested the submission of its two special issues which, by their nature, are inferential rebuttal issues. However, this case was tried after September 1, 1973, the effective date of the amendment to Rule 277, T.R.C.P., providing that inferential rebuttal issues shall not be submitted to the jury.

Gulf's requested issues, as is the submitted issue no. 14 for that matter, are inferential rebuttal issues because they are argumentative denials having for their purpose the disproval of Hodges' incapacity produced by a general injury by establishing incapacity produced by a specific injury. This is evident because Hodges, to recover under the submission for incapacity

resulting from a general injury, had to demonstrate that his incapacity was not caused solely by a specific injury. In this sense, the denials, although they must be pleaded, are not true affirmative defenses requiring specific findings to submitted issues. See G. Hodges, Special Issues Submission in Texas 40, 46 (1959, 1969 Supp.).

Therefore, Rule 277, T.R.C.P., requires that the subject matters of Gulf's requested inferential rebuttal issues be submitted as explanatory instructions and not as issues. But Gulf, not having tendered an instruction thereon in substantially correct wording, waived any error in the omission of such explanatory instructions from the charge. Rule 279, T.R.C.P. The first three points are overruled.

Gulf's remaining eight points of error attack the status of the evidence to justify the submission of, and to adequately support the jury's answers to, various of the special issues. A background statement summarizing the evidence more properly positions the points of error.

Plaintiff R. B. Hodges was a painter earning $225 per week. While on a ladder following his trade in Lubbock, he fell twenty-five feet to a concrete floor when the ladder slipped. Although he does not remember how he landed, he was immediately aware of injuries to his left side, face and legs; he was bruised and hurting all over his body, and he could not see.

Initially, Hodges was attended by Dr. Cone, who stitched his eye, mouth and chin, took X-rays, prescribed medication and, after about a week, suggested that Hodges return to his job and work out the soreness.

Hodges returned to work and thereafter worked intermittently for several paint contractors until April, 1973. The soreness did not disappear; his neck hurt and if he placed his neck in a certain position, the pain prevented him from working for the rest of the day. If he did overhead work using his right arm for four to six min-

utes, his right arm would go to sleep and he would lose the grip in his right hand. Although his employment with the paint contractors was terminated for lack of work, Hodges said his condition worsened and he could not do the work without the assistance of his fellow workmen. He could not do overhead work and his condition prevented him from attaining the high degree of quantity and quality associated with and previously achieved by him in his trade. Fellow workmen confirmed that the quality of Hodges' work was not up to the standard required.

Finally, when he felt that he could no longer perform as a painter, he tried to find other work to make a living. He went to work in April of 1973 for City Wrecker Service in Lubbock, driving a wrecker, at an income of $100 per week. Since that time he has not tried to follow the trade of a painter.

In the interim, Hodges saw three other doctors, all of whom took X-rays. Dr. Richard Smith's examination revealed that Hodges' primary trouble stems from his neck injury. He suggested therapy and Hodges took twenty-two treatments together with the exercises indicated, which he has continued. The diagnosis of Dr. Ray Santos, an orthopedic surgeon, was a post-traumatic injury to the cervical spine with probable disc disease and compression of the medial nerve at the wrist. The doctor found Hodges to have a Grade III limitation of motion with difficulty with his neck in motion and extension limitations and trouble lifting and holding objects, resulting in continued loss of capacity in both particulars on a permanent basis. His recommendation is surgery to decompress the transverse carpal ligament in the wrist and a laminectomy to fuse the 6th and 7th vertebrae in the neck by use of a piece of bone from the hip.

By its fourth point, Gulf assigns error in the submission of issue no. 6, which inquired whether the total incapacity was permanent or temporary and to which the

jury answered "Temporary," on the basis that there is no evidence of permanent total incapacity. Points five and six are Gulf's contentions that the evidence is legally and factually insufficient to justify submission of issues nos. 8, 9 and 10 relating to, and answered by the jury to establish, permanent partial incapacity caused by a general injury.

■ Since all three points pertain to the evidentiary support for the submitted issues, they must be viewed as "no evidence" points. Garza v. Alviar, 395 S.W.2d 821 (Tex.1965). The evidence must be viewed as of the time the issues were submitted, State v. Schlick, 142 Tex. 410, 179 S.W.2d 246 (1944), and not in the context of the jury's findings.

■ As the background statement reveals, Hodges testified to a general injury and to the incapacitating effects thereof. Although Hodges could and did perform painting after his injuries, the testimony of Hodges and other witnesses was that his condition worsened and he was not able to do, and he was restricted in attempting to perform, the usual tasks required of . a workman. Dr. Santos testified that Hodges would have difficulty with, and he would have motion and extension limitations of, his neck and hand.

There being some evidence raising the issues, the court was required to submit them. Garza v. Alviar, supra. Points four, five and six are overruled.

The jury's permanent partial incapacity findings to issues nos. 8, 9 and 10 are attacked in point seven as being both without any support in the evidence and against the great weight and degree of the evidence. Gulf points to the evidence that Hodges worked, without medication, as a painter for some fourteen months after his accident, and that he never was discharged for unsatisfactory work.

■■ Unfortunately, there is no precise formula by which incapacity may be measured; the extent and duration of disability is at best an estimate. Maryland Casualty Company v. Davis, 464 S.W.2d 433 (Tex.Civ.App.—Amarillo 1971, writ ref'd n. r. e.). However, from what has been written responsive to the three preceding points, it must be held that there is some evidence of probative force to support the jury's answers. And, considering all of the evidence from which the summarized background statement was made together with the emphasis placed thereon by Gulf, it cannot be said that the jury's answers to the issues are so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. Point seven is overruled.

■ Point eight reads: "All of the evidence adduced in the trial of this case shows that following January 28, 1972, any incapacity . . . was caused by the use of plaintiff's right hand at levels above his shoulder." As cast, the point is a "no evidence" presentation, and it must be overruled since there is some evidence that Hodges suffered incapacity from the posttraumatic injury to the cervical spine. Garza v. Alviar, supra.

Gulf asserts through its point nine that there is no evidence to support the jury's answer to issue no. 14 or, alternatively, that the finding is against the great weight and preponderance of the evidence. Without belaboring the evidence, suffice it to state that the measure accorded the evidence heretofore in considering the previous points dictates that this point must be overruled.

■ The jury's issue no. 12 finding of a $125 per week reduction in Hodges' average weekly wage earning capacity is challenged in point ten. Given prominence is Hodges' post-accident employment as a painter at no reduction in salary and his voluntary change of occupation "in anticipation of trial." If it were a cogent argument that one would reduce his earning capacity by $125 per week to be entitled to

not more than $49 per week in compensation benefits, there would have to be ignored the testimony that Hodges, after his accident, could not perform the usual tasks of a painter and that he sought work he could adequately perform in order to make a living. When all the evidence is considered, the jury's determination is not against the greater weight and degree of the credible evidence. Point ten is overruled.

The eleventh, and last, point is that the jury's issue no. 13 finding of a lump sum award should be set aside because it "is based upon insufficient evidence." This point, based upon the argument made thereunder, could mean that the evidence is either legally or factually insufficient to support the jury's finding. Garza v. Alviar, supra.

The testimony on which the jury's finding is based was given by Hodges. The testimony is otherwise uncorroborated and in some instances the costs estimated to supply his needs seem excessive; nevertheless, Hodges' testimony is to the effect that his expenses are in excess of his present income and the maximum weekly compensation benefits that he could be awarded. He said that he had to sell his automobile to pay his bills and he had borrowed $500. He further declared that he would use a lump sum payment to secure the recommended surgery.

Thus, there is some evidence of manifest hardship and injury to support the jury's finding; and, considering all of the evidence, we cannot say that the jury's finding is so against the great weight and preponderance of the evidence as to be manifestly wrong and unjust. See Texas Indemnity Ins. Co. v. Arant, 171 S.W.2d 915 (Tex.Civ.App.—Eastland 1943, writ ref'd). The final point is overruled.

The judgment of the trial court is affirmed.