Alton R. TAYLOR, Appellant,

v.

H. C. LEWIS, Individually and as Independent Executor of the Estate of Elaine Lewis, Deceased, Harold Chapman and Ray Chapman, Appellees.

No. 8748.

Court of Civil Appeals of Texas, Amarillo.

May 16, 1977.

Second Rehearing Denied June 13, 1977.

Smith & Baker, Inc., Edward R. Smith, Lubbock, for appellant.

Crenshaw, Dupree & Milam, J. Orville Smith and Cecil C. Kuhne, Lubbock, for appellees.

## ON MOTION FOR REHEARING

REYNOLDS, Justice.

In affirming the trial court's judgment on original consideration, we held that the record failed to reflect that certain of appellant's points of error were preserved for review. Accompanying appellant's motion for rehearing is appellees' concession of a procedural correctness that, together with our erroneous computation as to the time the judgment became final, causes us to withdraw our 18 April 1977 opinion, together with the resulting judgment, and to substitute the following:

Plaintiff Alton R. Taylor failed to convince a jury that he became a partner with defendants H. C. Lewis, Harold Chapman and Ray Chapman in a motel venture or that the defendants had breached his employment agreement. Because no reversible error is presented, we affirm the trial court's take-nothing judgment.

Harold Chapman and Ray Chapman owned land in Lubbock, Texas, on which contractor H. C. Lewis was to construct the Lubbock Inn Motel. Considering the land and construction at cost, the Chapmans were to own fifty per cent and Lewis was to own the other one-half of their partnership venture.

As the construction was beginning in November of 1971, Alton R. Taylor expressed to Harold Chapman his interest in managing the motel. After a series of meetings, it was orally agreed that Taylor would manage the motel. For his management services, Taylor was to be furnished an automobile, was to receive a salary of $800 each month during the construction, a $1,000 monthly salary after the motel

opened, and at such time as there were profits, Taylor was to receive ten per cent of the profits to be applied toward the purchase of a ten per cent interest in the motel as determined by the cost of the land and the construction.

Taylor began his services in January of 1972. The Lubbock Inn Motel became operational in September of that year. The operation had not produced any net profits up to 21 May 1973 when, upon execution of an agreement between the parties, Taylor ceased to manage the motel. The agreement, reciting that a dispute has arisen whether Taylor is a partner and has properly managed the Inn and that defendants demand that Taylor relinquish management, provides that Taylor, upon receipt of his accrued salary and without recognizing the propriety of the demand, shall peacefully relinquish management without waiving any of his rights.

Thereafter, Taylor filed this suit against H. C. Lewis, individually and as independent executor of the estate of Elaine Lewis, deceased, and the Chapmans to establish the existence of a partnership and for an accounting, settlement and winding up of the partnership affairs. Alternatively, he sought damages for breach of his employment agreement.

The litigants are in accord with respect to their basic understanding, which is merely an executory agreement to form a partnership in the future when the condition precedent—i. e., the realization of net profits—is fulfilled. *Buzard v. McAnulty,* 77 Tex. 438, 14 S.W. 138, 139 (1890). Notwithstanding, Taylor contends, and the defendants deny, that they intended, as shown by their expressions and implied from their conduct and the surrounding circumstances, to enter into a relationship which included the essential elements of a partnership so that, in fact, their association became a partnership. See *Howard Gault & Son, Inc. v. First National Bank of Hereford,* 541 S.W.2d 235, 237 (Tex.Civ.App.—Amarillo 1976, no writ).

To evince the partnership, Taylor produced evidence that he left a job of long standing to go with defendants at a sacrifice in regular monthly income, hoping and expecting to make some money in the new venture. He went to Chicago to purchase furniture with the defendants, who publicly referred to him on occasions in Lubbock as a partner. He and defendants signed applications for a beverage cartage permit, a mixed beverage permit, a mixed beverage late hours permit, a sales tax permit and a caterer's permit in which he was listed as a partner as well as in the permits issued pursuant thereto. Taylor was shown as an owner in an application for a store license. Three newspaper items referred to him and the defendants as either the builders or operators of the motel and none of the defendants voiced any objection. He, together with the defendants, executed a bank renewal note in the sum of $200,000 for interim financing of the motel. He was listed on a certificate of assumed name supplement as one of the parties conducting the business of The Lubbock Inn. An insurance policy issued to the Lubbock Inn as a partnership showed Taylor to be one of the partners. Although he was reported on the quarterly employer's reports for 1972 as an employee, he was not so reported for 1973. In the United States Partnership Return of Income for 1972, he was listed as a partner with a ten per cent interest in the net operating loss of The Lubbock Inn. The general ledger of the motel showed him as a partner and the stubs for the checks issued to him in 1973 were marked "Partner's Withdrawal."

Taylor acknowledged that the agreement failed to provide what should be done in the event of a loss instead of a profit and failed to provide a date for the conveyance of his ten per cent interest. Although he said it was "discussed" that he might "buy in" by assuming ten per cent of the indebtedness if defendants were able to borrow the money for the entire project, he did not testify that such was a part of the agreement between the litigants.

It was the defendants' position that their basic agreement was never changed; that there was no agreement, and no testimony by Taylor, or anyone else, that he could

become a partner simply by assuming ten per cent of the partnership debts; and that the relationship never ripened into a partnership with Taylor. Their testimony was that Taylor was included on the liquor applications because they were advised the Liquor Control Board required everyone with an interest, direct or indirect, to be shown, and Lewis was of the opinion that Taylor had the applications for the liquor permits, as well as the applications for the store license and sales tax permit, filled out. The county clerk prepared the certificate of assumed name supplement. The accountant who prepared the tax return stated he never was told by defendants that Taylor was a partner, and he prepared the return showing Taylor as an income tax partner without any concern whether he was a legal partner. There was testimony that Taylor signed the bank renewal note at the request of the banker; that no one told the banker that Taylor was a partner; that the designation "partner," which was adjacent to the signatures of the signing defendants, was not placed by Taylor's signature on the note; that the bank note was paid, but that Taylor made no payment on the note; and that Taylor did not execute the original bank note or the final note for $1,550,000 to finance the motel venture.

It was the testimony of Harold Chapman that he and Taylor never used the word "partnership" and Taylor never claimed to be a partner before May of 1973. He further said that neither he nor, so far as he knew, any of the other defendants, had any knowledge that the motel books showed, or authorized the books to be changed to show, Taylor's salary as a partner's withdrawal account. Ray Chapman's summary of the relationship was: "We assumed that sometime down the road that when we got the thing finished we would establish a purchase price and by that time he [Alton Taylor] would either give us a note for a hundred and fifty or sixty-five thousand, 10 per cent of whatever the thing cost, or have something to work into to let his bonus apply on the purchase of, but a partnership was never mentioned, it wasn't thought of in that sense."

Alternatively, Taylor pleaded a "wrongful discharge" generally; he did not plead that his employment was for a definite period of time or that there were specific contractual limitations on discharge. Taylor acknowledged that nothing had been said in the pre-employment discussions about defendants' right to fire him at any time or his right to quit at any time. After mentioning some problems of operation of the motel, Taylor stated that on or about 15 or 16 May 1973, Ray Chapman made objections to the operation and finally said, "If this thing isn't changed, we want you to leave;" and then added, "The fact of the business, we do want you to leave." Taylor asked, "When?" He was told, "The sooner the better." When asked by his counsel, Taylor responded that he did not quit, but that he was fired.

The Chapmans testified that no term of Taylor's employment was discussed or agreed on. Harold Chapman, with whom Taylor first discussed management employment but who was not present when the relationship was terminated stated that, regardless of the recitations in the 21 May 1973 agreement, Taylor was not discharged, but that he quit. On this issue, Lewis' testimony was that, although there was cause to discharge Taylor, he gave no ultimatum to Taylor, that he neither demanded nor participated in making any demand that Taylor leave, and that Taylor was not fired. Ray Chapman reported that in the 14 or 15 May 1973 conversation with Taylor about Taylor's management shortcomings, Taylor became irritated and said, "If you think you can get somebody else to run this place better, you ought to do it." Ray Chapman testified that he did not reply that Taylor was fired, but said, "I think it's come to that point, Alton," adding that some time would be needed to find a replacement.

Taylor failed to convince the eleven jurors who signed the verdict that he became a partner with Lewis and the Chapmans. Although these jurors found that Lewis and the Chapmans agreed to employ Taylor, they found there was no specific period of

employment and failed to find that Taylor was discharged from his employment. From the trial court's take-nothing judgment Taylor has appealed, designating six points of error.

By his points three and five, Taylor respectively contends that the court erred in failing to direct a verdict as to the existence of a partnership and that he was discharged by defendants. Because Taylor had the burden of proof on these two issues, an instructed verdict would have been proper only if he established a partnership or a wrongful discharge as a matter of law; otherwise, if there is any conflicting evidence of a probative nature, the determination of the issues was for the jury. *Air Conditioning, Inc. v. Harrison-Wilson-Pearson,* 151 Tex. 635, 253 S.W.2d 422, 425 (1952).

With respect to point three, the Texas Uniform Partnership Act, Vernon's Ann. Civ.St. art. 6132b (1970), defines, in § 6(1), a partnership as an association of two or more persons to carry on as co-owners a business for profit, and sets forth, in § 7, the rules that shall apply for determining the existence of a partnership. Clearly, from these requisites, persons who intend to do the things that constitute a partnership are partners whether their expressed purpose was to create or avoid the relationship. *Howard Gault & Son, Inc. v. First National Bank of Hereford,* supra, at 237.

In connection with both points, Taylor argues that the acts, words and conduct of the parties establish as a matter of law the intent of the parties that he be a partner, and that the 21 May 1973 agreement establishes conclusively that he was discharged. For the reason that we must indulge every inference that properly may be drawn from the evidence against the instruction of a verdict, *Echols v. Wells,* 510 S.W.2d 916, 919 (Tex.1974), we cannot say

that the issues were established as a matter of law. The evidence upon the issues, which has been previously summarized, was conflicting and resulted in fact issues which were properly submitted to the jury for determination. Points three and five are overruled.

The jury answered "No" to the first special issue asking whether Taylor became a partner with Lewis and the Chapmans at some point in time after his employment and prior to 21 May 1973. In submitting this issue, the court, as a part of its instruction, advised the jury that:

By the term "partnership" is meant a relationship between two or more persons where there is a common enterprise and a community of interest *as co-owners* therein, a prosecution of the common enterprise for the joint benefit of the parties, and a right of each of the parties to participate to some extent in the profits as such and an obligation of each of the parties to bear some portion of the losses, if any, sustained in the business. (Emphasis added.)[1]

During its deliberation, the jury submitted to the court this question: "Would an expansion or definition on 'Co-Owners' be possible?" Counsel for Taylor requested the court to clarify the term by instructing the jury that "it was not limited to those who contributed property but included also those who became Co-Owners by reason of contribution of services." The court declined to so instruct, but instead instructed the jury that "no further definition would be given."

These actions by the court prompt Taylor's first point of error, a multifarious one. It embraces, as shown by his argument and an examination of the cited authorities, two contentions: first, the court erred in including the words "as co-owners" in the definitional instruction without certain qualifications of its meaning; second, the court erroneously refused to define "co-owners" at the jury's request.

---

1. Except for the inclusion of the words "as co-owners," the definition given by the trial court has been approved both before and after the 1 January 1962 effective date of the Texas Uniform Partnership Act as embodying all of the elements necessary to constitute a partnership. See *Cavazos v. Cavazos,* 339 S.W.2d 224, 226 (Tex.Civ.App.—San Antonio 1960, writ ref'd n. r. e.), and *Conrad v. Judson,* 465 S.W.2d 819, 826 (Tex.Civ.App.—Dallas 1971, writ ref'd n. r. e.), *cert. denied,* 405 U.S. 1041, 92 S.Ct. 1312, 31 L.Ed.2d 582 (1972).

■ Taylor is not in a position to complain that the court did not define the word "co-owners" in its charge. When the court did not define the word, Taylor was required by Rule 279[2] to tender in writing a substantially correct definition to preserve his complaint. *Texas Employers' Ins. Ass'n v. Mallard,* 143 Tex. 77, 182 S.W.2d 1000, 1002 (1944). Rather than submitting a substantially correct definition, Taylor merely asserted that the court should clarify the distinction between ownership of assets belonging to the partnership and ownership of an interest in the partnership itself that was implied by use of the word "co-owners." Under these circumstances, the failure to tender a substantially correct definition as a part of the requested instruction waived the complaint now made. *Great American Indemnity Co. v. Sams,* 142 Tex. 121, 176 S.W.2d 312, 313–14 (1944).

■ Moreover, it was not incumbent upon the court, and especially so in the absence of a valid predicate, to define the term "co-owners" in its charge. While the court is obligated by Rule 277 to "submit such explanatory instructions and definitions as shall be proper to enable the jury to render a verdict," the rule ordinarily operates to require a definition of only those words or phrases given a distinctive meaning by law. *Miller v. Watson,* 257 S.W.2d 839, 841 (Tex.Civ.App.—Dallas 1953, writ ref'd n. r. e.). The word "owner" is one of common use having no special legal or technical meaning apart from its ordinary acceptation and, therefore it need not be defined. *Pritchett v. Highway Insurance Underwriters,* 158 Tex. 116, 309 S.W.2d 46, 49 (1958). The prefix "co-" is, according to Webster's New International Dictionary (2nd Ed.), used with nouns to mean "with; together; joint." The combination of the two, then, has no meaning other than the common meaning of joint owners or owners together. So, generally, the term needs no definition for the juror of average intelligence, who would be presumed to construe the use of the word in its usual and ordinary sense.

■ Rule 286 does provide that the jury, after it retires, "may receive further instructions of the court touching any matter of law" at its request. The reason for the jury's request for an expansion or for a definition of the word "co-owners" is neither apparent from the wording of its request as was the situation in *Stacks v. Rushing,* 518 S.W.2d 611, 613 (Tex.Civ.App.—Dallas 1974, no writ), nor stemmed from an error obvious on the face of the charge as was the circumstance in *Missouri Pacific Railroad Company v. Cross,* 501 S.W.2d 868, 870 & 873 (Tex.1973). Nevertheless, once the jury made its request, it indicated the jury was seeking guidance in rendering a verdict and, consistent with the rules, it became proper—i. e., suitable, right, appropriate—for the court to affirmatively, and not negatively, respond. The court could have responded, as the court did in *Southwestern Greyhound Lines, Inc. v. Dickson,* 219 S.W.2d 592, 594 (Tex.Civ.App.—Austin 1949, no writ), that the term was used in the issue in its usual and ordinary meaning, or the court could have given the definition of the term.

The refusal to affirmatively respond to the jury's request invokes the inquiry whether the error amounted to such a denial of Taylor's rights as was reasonably calculated to cause and probably did cause the rendition of an improper judgment. As the only evidence thereof, Taylor refers to the affidavits of jurors attached to his motion for judgment non obstante veredicto. Those instruments show, so Taylor says, that when the court refused to expand upon the meaning of "co-owners," at least three jurors who had originally voted to answer special issue no. 1 "Yes," accepted the interpretation of some jurors that one could not become a co-owner simply by reason of services when others had contributed property, and voted to answer the issue "No." We may not consider the affidavits. They are hearsay and are not evidence of the matters stated therein, *Shelby Biscuit Company v. Robbins,* 417 S.W.2d 645, 647

---

**2.** All rules cited are the Texas Rules of Civil Procedure.

(Tex.Civ.App.—Waco 1967, writ ref'd n. r. e.), but only serve to particularize the evidence to be elicited on a hearing before the court. *Roy Jones Lumber Co. v. Murphy*, 139 Tex. 478, 163 S.W.2d 644, 646 (1942). The record is devoid of any hearing at which the affiants testified to the matters stated in the affidavits.

The most that can be said is that the refusal to affirmatively instruct left the jury free to misconstrue the usual and ordinary meaning of the phrase "as co-owners." It is settled, however, that a misconstruction of the court's charge does not of itself authorize the setting aside of the court's judgment. *Whited v. Powell*, 155 Tex. 210, 285 S.W.2d 364, 367–68 (1956). See, also, *Compton v. Henrie*, 364 S.W.2d 179, 184 (Tex.1963), and authorities there cited. The jury's failure to find that Taylor became a partner is not, as later discussed, so against the great weight and preponderance of the evidence as to be clearly wrong and unjust. Accordingly, it does not reasonably appear from this record that the court's failure to affirmatively respond to the jury's request was such an error that was reasonably calculated to cause and probably did cause the rendition of an improper judgment. Rule 434. The first point is overruled.

During the pendency of the cause, Taylor directed requests for admissions of fact "within ten days after service" to each defendant individually and, on the same day, submitted the same requests to all defendants jointly. Primarily, the requests were for admissions concerning the defendants' states of mind in making and filing federal income tax returns for 1972 allocating a loss to Taylor as a partner, and in designating him as a partner in a sales tax permit application. More than half of the admissions sought in each request were conditioned on answers that might be made to other admission requests.

Each defendant filed answers to the requests directed to him individually on the twenty-first day after he was served and approximately two and one-half years before trial. The defendants did not file a reply to the requests directed to them jointly.

After the trial commenced, Taylor orally moved the court to deem admitted all requests because the individual responses were not made within the time he specified and the request for joint admissions was unanswered. The trial court overruled the motion and refused to deem the matters admitted. This action is the subject matter of Taylor's second point, the crux of his argument being that Rule 169 requires the admissions requested.

Rule 169 was designed, not as a trap to prevent the presentation of the truth in a full hearing but as a tool for the fair disposition of litigation with a minimum of delay. *Bynum v. Shatto*, 514 S.W.2d 808, 811 (Tex.Civ.App.—Corpus Christi 1974, no writ); *Gordon v. Williams*, 164 S.W.2d 867, 868 (Tex.Civ.App.—Eastland 1942, writ ref'd w. o. m.). Thus, the court has considerable discretion whether to apply the sanctions authorized by Rule 169, and the ruling of the court will be disturbed only upon a showing of a clear abuse of that discretion. *Schindler v. Ag Aero Distributors, Inc.*, 502 S.W.2d 581, 584 (Tex.Civ.App. —Corpus Christi 1973, no writ), and cases there cited. Under this record and aside from the fact that deeming all of the requests admitted would result in contradictory admissions, we perceive no abuse of discretion sufficient to disturb the court's ruling.

Rule 169 allows "not less than ten days after delivery" of the request for a response; consequently, Taylor's demand for responses "within ten days after service" was defective for not following the requirements of the rule. *Bynum v. Shatto, supra*, at 810–12. Absent his allowance of at least the minimum time mandated by the rule for a response, Taylor has not shown the court clearly abused its discretion in refusing to deem admitted the requests answered twenty-one days after service and some two and one-half years before trial. *Accord, Bickel v. American Trust Life Insurance Company*, 468 S.W.2d 873, 875 (Tex. Civ.App.—Eastland 1971, writ ref'd n. r. e.).

The unanswered requests directed to the defendants jointly to secure admissions as to the state of mind of the defendants consisted of the identical admissions, albeit with some variations in wording, which were requested of, and answered by, each defendant individually. Because admissions serve as evidence in lieu of the testimony of witnesses, 2 McDonald, Texas Civil Practice § 10.06 (1970), the demand should be for admissions of relevant and material evidentiary facts within the knowledge of the opposing party and not for inadmissible opinions. *White v. Watkins*, 385 S.W.2d 267, 269 (Tex.Civ.App.— Waco 1964, no writ). While a witness may testify to his own intention and state of mind where the same is material, *Hamburg v. Wood*, 66 Tex. 168, 18 S.W. 623, 625 (1886), the courts uniformly exclude the offer of testimony by a witness as to another person's state of mind where the conduct and other circumstances from which the witness would draw his inference of the other's state of mind could be so communicated to the jury that they would be equally well equipped to draw the inference. See 2 C. McCormick & R. Ray, Texas Law of Evidence § 1428 (2d ed. 1956), and authorities there cited. Here, the same requests made to the defendants individually were answered, the documentary evidence was introduced and the witnesses testified before the jury. The request for joint admissions bearing on the state of mind of others runs afoul of legal principles and, particularly under the circumstances of this cause, should not be deemed admitted facts. *White v. Watkins, supra.* It follows that we cannot say that the court clearly abused its discretion in refusing to deem admitted the admissions requested but unanswered. The second point is overruled.

Taylor utilizes his fourth point of error to submit that the jury's failure to find he became a partner with the defendants is against the great weight and preponderance of the evidence. The particulars of the documentary evidence and the testimony earlier noticed, together with related testimony by other witnesses, were before the jury. It was for the jury, as the finder of facts, to judge the credibility of the witnesses, to assign the weight to be given their testimony, and to resolve the conflicts and inconsistencies in the testimony. To this end, the jury was privileged to believe all or part or none of the testimony of any one witness. *Esteve Cotton Company v. Hancock*, 539 S.W.2d 145, 158 (Tex. Civ.App.—Amarillo 1976, writ ref'd n. r. e.). We have, as *Traylor v. Goulding*, 497 S.W.2d 944, 945 (Tex.1973), directs we must, weighed all of the evidence. Given the controlling legal principles, we cannot say, with due deference to the jury's prerogative, that the jury's failure to find that Taylor became a partner is so against the great weight and preponderance of the evidence as to be manifestly unjust. The fourth point is overruled.

Point six is drafted to complain of error in submitting special issue no. 8, one of the issues submitted relative to Taylor's cause of action for wrongful discharge. It was the issue inquiring whether, and the one in response to which the jury found that, the litigants did not agree on a specific period as the duration of Taylor's employment.

The point lists three grounds for the error, but Taylor, citing *Gulf Insurance Company v. Hodges*, 513 S.W.2d 267 (Tex. Civ.App.—Amarillo 1974, no writ), argues only that the issue should not have been submitted because it is an inferential rebuttal issue. *Hodges* does hold that an inferential rebuttal issue should not be submitted, but Taylor did not voice this objection to the trial court in his objections to the court's charge. Therefore, the point, as it is briefed and argued, was not preserved for appellate review. Rules 272 and 274; *Marino v. Vigilant Insurance Company*, 523 S.W.2d 518, 520 (Tex.Civ.App.—Houston [14th Dist.] 1975, no writ). Moreover, it is unnecessary to resolve the validity of the point. When Taylor failed to convince the jury that he was discharged and did not attack the answer as being against the great weight and preponderance of the evidence, his cause of action for wrongful discharge was at an end and the error, if any,

in submitting special issue no. 8 became immaterial. *Stout v. Rhodes,* 373 S.W.2d 94, 96 (Tex.Civ.App.—San Antonio 1963, writ ref'd n. r. e.). *Cf. Tex-Jersey Oil Corporation v. Beck,* 157 Tex. 541, 305 S.W.2d 162, 165 (1957).

Taylor's motion for rehearing is overruled. The judgment of the trial court is affirmed.