TEXAS EMPLOYERS INSURANCE
ASSOCIATION, Appellant,

v.

Richard RIVERA, Appellee.

No. 14223.

Court of Appeals of Texas,
Austin.

April 3, 1985.

Rehearing Denied May 1, 1985.

See also, 673 S.W.2d 690.

Mark T. Mitchell; Stubbeman, McRae, Sealy, Laughlin & Browder, Inc., Austin, for appellant.

Tom A. Stribling, Colbert & Freeman, Austin, for appellee.

Before EARL W. SMITH, POWERS and CARROLL, JJ.

EARL W. SMITH, Justice.

This is a workers' compensation case wherein the employee, Richard Rivera, received accidental concurrent general (to his head) and specific (to his right leg) injuries. Judgment for Rivera for general incapacity was based on jury answers to the first eight special issues in which the jury was permitted to find total temporary incapacity followed by a partial permanent incapacity, based upon the combined effects of the general and specific injuries.

In its sole point of error, appellant, Texas Employers Insurance Association (T.E.I.A.), contends that the trial court erred in its judgment by awarding Rivera compensation benefits for the combined effects of the concurrent general and specific injuries. We sustain the point of error, reverse the judgment of the trial court, and remand this cause with instructions to the trial court to enter judgment consistent with this opinion.

In his petition, Rivera alleged injuries to his *leg and body*, as a result of which he was totally and permanently incapacitated; or in the alternative, he was permanently partially incapacitated; and as a further result of said injuries and concurrent with his general injury, he sustained a specific injury to his right leg, as a result of which he suffered the total loss of use of his leg, or in the alternative, partial permanent loss of use thereof. Rivera did *not* plead that the specific injury to his leg extended to and affected other parts of his body, nor did the evidence so indicate.

T.E.I.A. answered by general denial, and pleaded further: that Rivera was not totally and permanently disabled; that any disability was temporary, not permanent, and was partial, not total; that Rivera's injury was confined to his right leg below the knee; that any incapacity or disability was limited to his leg, and was partial and temporary only; and that any incapacity or disability of Rivera was caused solely by the injury to his leg.

The case was submitted to the jury on special issues, with the answers to the first

eight issues forming the basis of the court's judgment. Special issue No. 1 was:

1. Do you find that Richard Rivera's *injury* [1] ... included his nose, face, or head, or was such injury confined to his right leg?

Answer: ... [I]t included his nose, face or head.

Following such issue, the jury further found that;

2. Rivera's *injury* was a producing cause of total incapacity;

3. & 4. The beginning date of which total incapacity was *September 21, 1981*, and the ending date thereof was *December 13, 1981;*

5. The injury was a producing cause of partial incapacity;

6. & 7. This partial incapacity began *December 14, 1981*, and was permanent; and,

8. Rivera's wage earning capacity during his partial incapacity was $528.80 per week.

The court then submitted a series of issues which asked the jury to make findings as to the extent of the general and specific injuries, *independent of each other*, and the jury in response to such issues, found as follows:

9. That the *injury* was a producing cause of total loss of use of Rivera's right leg;

10. Which total loss began *September 21, 1981;* and,

11. Ended *December 13, 1981* [the same beginning and ending dates found by the jury as to the combined general and specific injuries in Issues Nos. 3 and 4, *supra.*];

12. That the injury was a producing cause of partial loss of use of the leg;

13. Which partial loss began *December 14, 1981* [the same beginning date found by the jury in Issue No. 6 as to partial incapacity based upon the combined injuries];

14. Such partial loss of use was permanent; and,

15. The degree of partial loss of use was 10%.

The court then submitted general incapacity issues again; however, this time the jury was instructed in answering the general issues Nos. 16 through 22 as follows: "[Y]ou are *not* to take into account the effects of Richard Rivera's right leg or base any findings on such conditions," and, "If you have answered Special Issue No. 1, 'We find that [the injury] included his nose, face or head,' then answer Special Issue No. 16; otherwise do not answer Special Issue No. 16."

The jury then further found:

16. Rivera's injury was a producing cause of total incapacity;

17. The beginning date of which total incapacity was *September 21, 1981;*

18. The ending date of same was *September 26, 1981;* and,

19. The injury was *not* a producing cause of partial incapacity.

In view of the answer to Special Issue No. 19, Issues Nos. 20, 21 and 22 were not answered.

Rivera objected to the submission of Special Issues Nos. 16 through 22 on the ground that such submission of issues "which do not control the disposition of the case allows the jury to consider issues not raised by the pleadings or the evidence" and that the issues would "in all probability or necessarily confuse the issue and therefore will leave prejudice to the plaintiff's case." The objections were overruled.

T.E.I.A. objected to Special Issues Nos. 2 through 8 because they "improperly allow the jury in this concurrent injury case to consider a specific injury in determining the general incapacity issues ..., [and] [t]o allow the jury in Issues Nos. 2, 3, 4, 5, 6, 7 and 8 to include both the alleged general injury and the alleged specific injury makes the specific injuries statute in effect worthless. In this situation, there never would be a specific injury case if all the plaintiff would have to do is show that he sustained

---

1. All emphasis supplied unless otherwise indicated.

a scratch to some part of his body or a bruise to some part of his body. The way this charge is submitted that is all the plaintiff would have to show to allow the jury to consider both the general injury and the specific injury in determining total incapacity, and in the issues dealing with partial incapacity."

T.E.I.A. further objected that the issues which should be submitted to the jury were those which T.E.I.A. tendered to the court. Moreover, T.E.I.A. objected that the "jury should not be allowed to consider the combined effects ... [citing cases] unless there is a finding by the jury first of either total or partial permanent incapacity as a result of the head injury and total or permanent [sic], total or partial loss of use to the right leg which is permanent." Finally, T.E.I.A. objected that Issues Nos. 2, 3, 4, 5, 6, 7 and 8 should follow issues inquiring about the loss of use of the leg and incapacity for the head only. Such objections were overruled.

T.E.I.A. also requested that the charge it submitted be substituted for the charge prepared by the court. The proposed charge is attached to this opinion as footnote[2]. It was denied by the court. In the proposed charge, Special Issue No. 1 is substantially the same as contained in the court's charge. However, in the proposed

**2.** 1. Did plaintiff receive an injury on or about September 21, 1981 which included his head, or was such injury confined to his right leg? (Answer "It included his head" or "It was confined to his right leg.")

If it included his head, answer No. 2.

In determining Issues Nos. 2, 2A, 2B, 3, 3A, 3B and 3C, you are not to take into account the effects of plaintiff's right leg or base any findings on such conditions.

2. Was such injury a producing cause of any total incapacity? (Answer "Yes" or "No")

If it was, answer 2A and 2B.

2A. Find the beginning date of total incapacity. (By stating month, day and year)

2B. Find the duration of total incapacity. (By answering "Permanent" or by stating the ending date)

3. Was the injury a producing case of any partial incapacity" (Answer "Yes" or "No")

If it was, answer 3A, 3B and 3C.

3A. Find the beginning date of partial incapacity, (By stating the month, day, and year)

3B. Find the duration of partial incapacity. (By answering "Permanent" or by stating the ending date)

3C. Find plaintiff's average weekly earning capacity during partial incapacity. (By stating in dollars and cents)

4. Was plaintiff's injury to his right leg a producing cause of any total loss of use of plaintiff's right leg? (Answer "Yes" or "No")

If it was, answer 4A, 4B and 4C.

4A. Find the beginning date of such total loss of use. (Answer by giving month, day and year)

4B. Do you find that such total loss of use of plaintiff's right leg is permanent, or was or will be temporary? (Answer "Permanent" or "Temporary")

If you have answered temporary, answer 4C.

4C. Find the ending date of such total loss of use of plaintiff's right leg. (Answer by giving month, day and year)

5. Do you find plaintiff's injury to his right leg was or will be a producing cause of any partial loss of use of plaintiff's right leg? (Answer "Yes" or "No")

If it was, answer 5A, 5B and 5C.

5A. Find the beginning date of such partial loss of use. (Answer by giving month, day and year)

5B. Do you find that such partial loss of use of plaintiff's right leg is permanent, or was or will be temporary? (Answer "Permanent" or "Temporary")

If you have answered temporary, answer 5C.

5C. Find the ending date of such partial loss of use of plaintiff's right leg? (Answer by giving month, day and year)

If you have answered "Yes" to No. 5, answer No. 6.

6. Find the degree of such partial loss of use of plaintiff's right leg. (Answer by giving the percentage of loss of use.)

If you have answered Issues Nos. 2B or 3B "Permanent" and 4B or 5B "Permanent", answer 8.

In determining Issues Nos. 7, 7A, 7B, 8, 8A, 8B and 8C you are to consider the combined effects of the injuries to plaintiff's right leg and head.

7. Was the injury a producing cause of any total incapacity" (Answer "Yes" or "No")

If it was, answer No. 7A and 7B.

7A. Find the beginning date of total incapacity. (By stating month, day and year)

7B. Find the duration of total incapacity. (By answering "Permanent" or by stating the ending date)

8. Was the injury a producing cause of any partial incapacity? (Answer "Yes" or "No")

If it was, answer 8A, 8B and 8C.

8A. Find the beginning date of partial incapacity. (By stating the month, day and year)

8B. Find the duration of partial incapacity. (By answering "Permanent" or by stating the ending date)

8C. Find plaintiff's average weekly earning capacity during partial incapacity. (By stating in dollars and cents)

charge, the jury is instructed that in answering the issues following Special Issue No. 1 which issues concern whether the injury was a producing cause of any total or partial incapacity, "[Y]ou are not to take into account the effect of plaintiff's right leg or base any findings on such conditions." Following the issues on general incapacity, the proposed charge submitted issues on the specific injury (loss of use of the leg). Then issues on general incapacity were submitted which permitted the jury to consider the combined effects of the injuries to the plaintiff's right leg and to his head. These issues asked the jury to determine whether Rivera's incapacity was total or partial and whether it was permanent or temporary. Though T.E.I.A.'s proposed charge was denied, the essential issues therein contained, insofar as separation of the specific from the general injuries (and the general incapacity and loss of use) are concerned, was submitted by the trial court in its Issues Nos. 9 through 22, inclusive.

Following the return of the verdict, T.E.I.A. filed a motion for the court to disregard the answers to Special Issues Nos. 2 through 8 and for judgment on the remaining verdict. Rivera moved the court to disregard Issues Nos. 16 through 22 and to enter the proposed judgment attached to his motion, based upon the jury findings on Special Issues Nos. 1 through 8. He contended that Issues Nos. 16 through 22 (where the jury was instructed not to take into account the effects of Rivera's right leg in determining whether he was totally incapacitated and the duration thereof, or whether he was partially incapacitated and the duration thereof) were not proper legal issues because there was no legal basis therefor. Rivera also contended that the answers to such issues were rendered immaterial by the findings of the jury to other special issues.

T.E.I.A.'s motion to disregard was denied, while Rivera's motion to disregard Issues Nos. 16 through 22 was granted by the court. Judgment was rendered for the plaintiff for 12 weeks of temporary total disability (paid by T.E.I.A. for that period of time), 107 weeks of past accrued perma-

nent partial disability benefits beginning December 14, 1981, and amounting to $17,-157.32, and 193 weeks of future permanent partial disability benefits at $154 per week.

## POINT OF ERROR

T.E.I.A. contends that the trial court erred in its judgment whereby the court combined the effects of concurrent general and specific injuries suffered by Rivera, in violation of Tex.Rev.Civ.Stat.Ann. art. 8306, § 12 (Supp.1985).

Rivera's response is that it was his right to have the jury consider the combined, cumulative, unsegregated effects of his general and specific injuries in assessing his incapacity according to the general injuries provisions of the Workers' Compensation Law.

Article 8306, § 12, *supra*, provides:

Where the employee sustains concurrent injuries resulting in concurrent incapacities, he shall receive compensation *only* for the injury which produces the longest period of incapacity ....

In the construction of such provision, the Supreme Court has held that when an employee suffers concurrent specific and general injuries, the employee cannot be compensated for both the specific injury and the general injury. *Tex. Gen. Indem. Co. v. Scott,* 152 Tex. 1, 253 S.W.2d 651, 654 (1952). In *Scott,* the employee alleged injuries to her left foot and neck, and that as a result of such injuries, she was totally and permanently disabled. The court noted that the plaintiff had alleged a *specific* injury to her left foot and a *general* injury to her neck, and as in the instant case, she did not plead, and the case was not tried, on the theory that the injury to the foot extended to and affected other parts of the body. The insurance carrier pleaded confinement to the left foot. In Special Issue No. 1, the jury found that the plaintiff sustained an accidental injury (a) to her foot and (b) to her neck. In Special Issue No. 3, the jury was asked:

Do you find ... that the *accidental injury* ... was a producing cause of the incapacity ... of the plaintiff?

Answer: Yes.

(emphasis not supplied). *Texas v. Scott, supra,* at 253 S.W.2d p. 654. In Issues Nos. 4 and 5, the jury found that the incapacity inquired about in Special Issue No. 3 was total and permanent. In Special Issue No. 11, the jury found that the disability of the plaintiff was not limited to her left leg below the knee. The insurance company's requested issue, inquiring whether the incapacity of the plaintiff was not caused solely by incapacity to her left foot, was refused.

The Supreme Court, in discussion of Special Issue No. 3, said:

The question naturally arises: What *accidental injury?* Was it the injury described in respondent's pleadings as the injury to the *foot* or the injury to the *neck?*

*Texas v. Scott, supra,* at p. 654. The Court then held in reversing a judgment for plaintiff for total and permanent incapacity:

We cannot assume that the jury meant to say in answer to Special Issue No. 3 that the accidental injury to the neck was the producing cause of the incapacity suffered by respondent. Neither can we assume that the jury found that the accidental injury sustained to the foot was a producing cause of the incapacity.

*Id.* at p. 654.

\* \* \* \* \* \*

In a case, such as this, where the plaintiff pleads two theories of recovery it is fundamental that if the evidence ... is sufficient on both theories, the trial court is required to submit *separately* the ultimate controlling issues affecting each theory to the jury and secure findings which will afford a basis for the judgment to be entered by the court. This is particularly essential in this case for the reason that under Sections 10 and 11, Article 8306, R.C.S., she might recover for a general injury, or under Section 12

of the same article she might recover for the specific injury to the foot.

*Id.* at p. 653.

\* \* \* \* \* \*

It was the burden of respondent [plaintiff] to plead, prove and secure jury findings supporting each of the theories advanced before she would be in a position to choose between the two and move the court to render and enter judgment upon the findings establishing the general injury.

*Id.* at p. 654.

*See also Texas Employer's Ins. Assn. v. Maledon,* 27 S.W.2d 151 (Tex.Comm'n.App. 1930).

Rivera relies heavily on *McCartney v. Aetna Casualty & Surety Co.,* 362 S.W.2d 838 (Tex.1962). There, the employee pleaded that he had sustained permanent injuries to his left leg and to other portions of his body, including his back, side and chest, and that as a result of the total effects of these *concurrent* injuries, he sustained a loss of wage earning capacity compensable under § 11 of art. 8306 (general incapacity provision). In the alternative, he alleged permanent partial loss of use of his left leg, compensable under § 12 (specific injury section). The Supreme Court noted that the plaintif made it clear that he intended to seek recovery alternatively under §§ 11 and 12. In *McCartney,* the jury found: (1) that the plaintiff sustained an accidental injury, (2) that such injury was not a producing cause of any total incapacity, and (3) that it was a producing cause of partial incapacity. On the alternative theory, the jury found that the injury was not a producing cause of total loss of use of the left foot, but *was* a producing cause of partial loss of use of the left foot.

The trial court rendered judgment for plaintiff for 300 weeks, thereby sustaining McCartney's theory that he was entitled to recover for the cumulative effects of his concurrent general and specific injuries. The Court of Civil Appeals reversed and remanded the cause to the trial court. *Aetna Casualty & Surety Company v. McCartney,* 355 S.W.2d 264 (Tex.Civ.App.

1962), rev'd, 362 S.W.2d 838 (Tex.1962). In reversing the judgment, the Court of Civil Appeals sustained Aetna's contentions: (1) that Special Issue No. 1 was improperly submitted because it was impossible to determine from such issue whether the "injury" was the general injury to the plaintiff's back and side or only the specific injury to his leg; and (2) that it was impossible to determine which injury the jury considered in finding that the accidental injury was the producing cause of partial permanent incapacity.

The Supreme Court's opinion in *McCartney*, if not carefully read, would seem to support Rivera's contention in this case that he was entitled to recover for the cumulative effects of his concurrent general and specific injuries. In reversing the Court of Civil Appeals and affirming the trial court, the Supreme Court held that in the *present case*, [i.e., *McCartney*] the affirmative answers of the jury afforded a basis for judgment in plaintiff's favor for the reasons that: (1) the jury found accidental injury, and (2) as a result of the total effects of plaintiff's concurrent injuries he had sustained a loss of wage earning capacity compensable according to § 11 of art. 8306, and (3) the jury also found that the plaintiff sustained a partial, permanent injury to his left foot, which would have supported a judgment under the specific injury provisions of § 12 of art. 8306, and (4) the trial court awarded judgment in favor of McCartney for the largest sum recoverable. However, the Supreme Court stated, in explaining its holding, that the fact that specific injury issues were submitted to the jury "does not render inapplicable the rule heretofore announced by this court that there is no necessity of submitting to the jury specially alleged injuries where the claimant sought damages for total and permanent disability." *McCartney v. Aetna, supra,* at p. 841. *See, Maston v. Texas Employers' Ins. Assn.,* 160 Tex. 439, 331 S.W.2d 907 (1960) and *Southern Underwriters v. Boswell,* 138 Tex. 255, 158 S.W.2d 280 (1942). The *McCartney* court further held:

In a case such as this [where both general and specific injuries are involved], it is sufficient to say that if the insurer desires to limit the claimant's recovery to the compensation recoverable under the provisions of Section 12 or seeks to otherwise separate the effects of general and specific injuries, the burden rests with the insurer to either request appropriate special instructions to the jury, in connection with the general injury issue, or plead, prove and secure jury findings so limiting the claimant's recovery. *Since Aetna has failed to do either, it cannot now complain of the judgment entered by the trial court under the provisions of Section 11, supra.*

*McCartney v. Aetna, supra,* 362 S.W.2d at p. 841.

*Boswell, Maston* and *McCartney* all hold that where the plaintiff is seeking total and permanent benefits for a general injury, it is sufficient to simply ask the jury if the plaintiff "sustained an injury to his body" without naming the particular portions of the body. The *McCartney* court in no wise overrules the holding in *Scott* that where the plaintiff seeks alternative recoveries under §§ 11 and 12, the trial court is required to submit *separately* the controlling issues affecting each theory as noted herein above. Nor does it overrule the holdings of the Supreme Court that where the plaintiff sustains concurrent general and specific injuries, he can recover only for the one affording the greatest compensation.

In *Chapa v. United States Fire Ins. Co.,* 644 S.W.2d 823, 826 (Tex.App.1982, no writ), the plaintiff alleged a general injury, and also a specific injury to her right knee. The court, citing *Highlands Underwriters Insurance Co. v. Harris,* 530 S.W.2d 350, 353 (Tex.Civ.App.1975, writ ref'd n.r.e.), held that where there are concurrent general and specific injuries, the worker can recover only for the injury which produces the longest period of incapacity or the greatest benefits. The *Chapa* case makes it clear that the logical application of the above stated rule to special issues is for the issues to inquire whether the plaintiff sus-

tained a specific injury to a part of his body and whether there was a general injury to his body *other* than to the part which allegedly sustained the specific injury.

Rivera also cites *Hargrove v. Trinity Universal Insurance Co.*, 152 Tex. 243, 256 S.W.2d 73 (1953), wherein the jury found both general and specific injuries. The plaintiff's two theories of recovery in *Hargrove* were general injuries under §§ 10 and 11, or specific injuries under § 12. Surprisingly, the findings as to the specific injuries resulted in greater benefits than the findings for general injuries, so the trial court awarded compensation for the specific injuries. The Court of Civil Appeals held that jury findings of a general injury were based on findings that injuries to the legs extended to and affected other portions of the body; therefore, the Court said the findings of specific injuries were but component parts of the issue on the general injury, and the Court reversed the trial court. The Supreme Court, in reversing the Court of Civil Appeals and affirming the trial court, held:

> We cannot agree that the findings on general injury are based upon other findings that the specific injuries to the legs extended to and affected other parts of the body. *No such issue was submitted.* *Id.* at p. 75.

The Court went on to hold that because the specific and general injuries were co-existent and gave rise to alternative rights of recovery, the trial court did not err in allowing recovery for the specific injuries.

In *Hargrove*, therefore, as in *McCartney*, the employee appears to have succeeded on appeal, not because the court determined that the employee was entitled to recover for a specific injury as part of his general injury (*i.e.*, for the combined effects of the concurrent specific and general injuries), but rather because the insurance company failed to obtain appropriate definitions or issues to differentiate the specific from the general injuries. This does not appear to be the case in the instant appeal, however, because the court *did* submit issues, similar to those requested by T.E.

I.A., which separated the effects of the specific and general injuries. Moreover, the court gave an instruction that in answering the general injuries issues, the jury should not consider the effects of the specific injury.

Rivera cites dicta in cases other than in *McCartney* and *Hargrove* and suggests that in certain situations, employees may recover for injuries to specific members of their bodies as part of the recovery for general injuries. The court in *Gulf Ins. Co. v. Hodges*, 513 S.W.2d 267, 270 (Tex. Civ.App.1974, no writ) stated:

> To warrant, then, a verdict of an incapacitating general injury under the pleadings, Hodges not only had to show that the concurrent injuries to specific members and general portions of his body produced the general injury, but he had to go further and demonstrate ... that his injury was not limited to ... the loss of use of, his right hand ....

*See also Texas Employers' Insurance Assn. v. Polasek*, 451 S.W.2d 260, 265 (Tex. Civ.App.1970, writ ref'd n.r.e.), which cites *Hargrove, supra*, and *Texas Employers' Insurance Assn. v. Yother*, 306 S.W.2d 730 (Tex.Civ.App.1957, writ ref'd n.r.e.), for the proposition that:

> An employee suffering both general and specific injuries can be compensated for the cumulative effect of all the injuries.

It is to be noted, however, that in *Yother* the actual holding is that where an injured worker proves an injury to his specific member and also a concurrent general injury, he is entitled to recover for the injury which produces the longest period of disability, and that where *both* injuries *are permanent,* (which is not the case here) he is entitled to recovery for the combined effects of both. *Id.* at 733. *See also Highlands v. Harris, supra.*

In *Harris*, the jury found that the plaintiff suffered *total and permanent* loss of use of the right leg below the knee, and that he suffered a general bodily injury which resulted in *permanent partial incapacity.* The court instructed the jury "that in determining Special Issues 6 through 10

[the findings on general injury] ..., you are not to take into consideration the effects of the condition of Mr. Harris' right ankle or base any findings on such condition." *Id.* 530 S.W.2d at 352. On appeal, the insurance company, relying on *Scott, Hargrove* and other authorities, argued that the plaintiff could not recover compensation for both a specific and general injury. The trial court rendered judgment for the plaintiff for both the specific and general injuries. On appeal, the court carefully analyzed *Scott, Hargrove,* and *Muro v. Houston Fire & Casualty Ins. Co.,* 310 S.W.2d 420 (Tex.Civ.App.1958, writ ref'd n.r.e.) and held:

> In our opinion § 12 and the authorities cited stand for the proposition that where there is a specific injury and a concurrent general injury the workman cannot recover compensation for both but may receive compensation only for the injury which produces the longest period of incapacity for the greatest benefits.

*Highlands v. Harris, supra,* 530 S.W.2d at p. 353.

The Court affirmed that part of the judgment awarding the plaintiff compensation for 300 weeks for partial permanent incapacity (the longest period of incapacity), reversed that part of the judgment which also awarded compensation for 125 weeks for the loss of the use of his leg below the knee, and remanded the case to the trial court to enter judgment in accordance with the opinion.

The case which most clearly sets out the rule which seems to govern in the current appeal, where the alleged injuries were partial and temporary, is *Muro v. Houston Fire and Casualty Co., supra.* On pages 422–423 of his opinion in *Muro,* Judge Pope explains the holding in *Texas Employers' Insurance Assn. v. Moreno,* 277 S.W. 84 (Tex.Comm.App.1925). During this explanation, Judge Pope clarifies the rule that when a specific injury to a certain member of the body covered by § 12 of art. 8306 occurs concurrently with a general injury to other parts of the body, the employee

may not recover for both injuries. As stated in *Muro:*

> Under [art. 8306, § 12] if a person lost an arm in an accident, and was at the same time otherwise injured, but in a manner not scheduled in Section 12, he could *forego his compensation* under Section 12 *for the loss of his arm* and claim under other sections ....

*Muro v. Houston, supra,* 310 S.W.2d at p. 422.

Thus, although Rivera argues persuasively that it seems unusual to conclude that an injury to a worker's leg is not a part of the general injury to his body, the language in art. 8306, §§ 11 and 12 and cases interpreting these sections mandate such conclusion. As pointed out in *Harris,* § 12 states that recovery under that section is *"in lieu of"* all other compensation" for the specific injuries listed in the section. *Highlands v. Harris, supra,* 530 S.W.2d at p. 353. Therefore, Judge Pope's holding that the injured worker had to *forego* his compensation under § 12 for his specific injury in order to collect for his general injury follows from the language of the statute.

In conclusion, the insurance company had submitted issues demonstrating that the employee suffered a general injury and a specific injury. The employee should not have recovered for both (which was the clear result in Issues Nos. 1 through 8), but only for the one giving the most recovery. In this case, the jury awarded the greater recovery for the specific injury, and the employee is entitled to recover accordingly.

The employee's final argument is that the insurance company may not now complain because at trial it failed to properly request submission of the issues and instructions upon which the company is relying. The employee was seeking alternative recoveries, however, and it was his, and the trial court's duty to submit Issues Nos. 9 through 22. *Texas v. Scott, supra.* Rivera cites *Hodges, supra,* for the proposition that the insurance company was asserting an inferential rebuttal, and thus, should have requested instructions instead of is-

sues. In *Hodges*, however, the insurance company asserted the inferential rebuttal that the employee suffered only a specific and not a general injury. Here, however, the insurance company agreed with the employee that there was both a general and a specific injury, and the company requested issues and an instruction to separate the two kinds of injuries. Therefore, the insurance company here was not seeking an inferential rebuttal issues, which "seeks to disprove the existence of an essential element submitted in another issue," but rather it was attempting to separate the injuries as required under *McCartney*. *Select Insurance Company v. Boucher*, 561 S.W.2d 474, 477 (Tex.1978). The requested issues were proper for this purpose.

The trial court should have disregarded the jury findings in Issues Nos. 1 through 8. It is clear that such issues submit the combined effects of general and specific injuries. Rivera argues that this was proper. When the general and specific injuries were properly separated in Issues Nos. 9 through 22, it is interesting to compare the beginning and ending dates of total loss of use of the leg to the beginning and ending dates of total incapacity under the first eight issues. It appears obvious that in its answers to Issues Nos. 1 through 8 inclusive, the jury was giving great weight to the specific injury, and very little to the general injury (*cf.* answers to Issues Nos. 9 through 19). It is further interesting to note that counsel for Rivera testified on the issues of manifest hardship, and that in doing so, he informed the jury as to the maximum recovery for total and permanent incapacity, for total temporary general incapacity followed by partial permanent incapacity, and for total or partial permanent loss of use of the leg. He concluded his testimony with the following statement:

> And the last thing you need to know is that a *person cannot receive both a general and a specific injury recovery at the same time,* and the *Court will take your answers and determine what amount of money either for the loss of earning capacity or for the loss of use*

*is greater and he will receive only that and not both.*

Thus, the trial court erred in awarding damages for both the general and specific injuries, and T.E.I.A.'s point of error is sustained.

The judgment of the trial court is reversed, and the cause is remanded to the trial court with instructions to enter judgment in accordance with this opinion.

CARROLL, J., not participating.